## Albert L. Sercomb

*v.*

## Charles Catlin, Receiver.

*Filed at Ottawa May 16, 1889.*

1. Receiver—*property in another jurisdiction—powers of a receiver.* The general rule is, that the powers of a receiver are co-extensive with the jurisdiction of the court which appoints him. He has no extra-territorial power of official action. But a receiver appointed in one State may, by comity, be permitted to recover the possession of property in another State, provided no citizen or suitor of the latter State is thereby prejudiced or injured.

2. Same—*interfering with property—after appointment of receiver—even before possession taken—power of the court.* After the appointment of a receiver of all the effects and property of A & B, an insolvent firm, C, the business manager of a foreign corporation having a branch office in this State, caused an attachment to be issued in Washington City, D. C., in favor of his corporation, against A & B, for a debt, and had the same levied on a stock of jewelry which A & B had, shortly before the appointment of the receiver, consigned to an auctioneer in Washington. C refused to dismiss the attachment suit, as directed by the court, whereupon the court adjudged C to be guilty of a contempt of court, and ordered his arrest and imprisonment : *Held,* that the court had the power to make the order of imprisonment.

3. Although the receiver of an insolvent firm or corporation may not have reduced to his possession the property and assets of the insolvents, this will not authorize any creditor to take legal steps against the property vested in the receiver, who is the officer of the court. Even if the property is in another State, this will not authorize a resident of this State to attach the same, as this will interfere with the receiver's taking possession.

4. Conflict of Laws—*extra-territorial effect of decree—as to property in another jurisdiction.* Where a court of equity has jurisdiction over the person of a defendant, it may make its decrees and orders affecting his property which is situated outside of its jurisdiction, and enforce obedience to them by imprisonment.

5. Contempt—*proceedings against corporations.* A corporation can only be punished for contempt, through its officers, or those acting in aid of it. The court may proceed against the corporation or against its officers who do the act interfering with the proceedings of the court, or who had the control of the action of the corporation.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

Messrs. FLOWER, REMY & HOLSTEIN, for the appellant:

Catlin was not an assignee under a voluntary assignment, a national bankrupt act, or under the State insolvent laws. He is merely a receiver under a judgment creditor's bill.

Of all conveyances by mere operation of law, in cases of bankruptcy, insolvency or receiverships *in invitum*, the weakest title is that of a receiver under a creditor's bill. A receiver under a creditor's bill is appointed for the benefit of one or more creditors, to the prejudice and exclusion of all other creditors of the debtor, while an assignee in bankruptcy or insolvency is appointed for the benefit of all creditors equally. We need not multiply authorities upon this proposition. The distinction we have suggested is universally recognized by the authorities. The Supreme Court of this State, in a very recent case, recognizes it. See *May* v. *National Bank*, 122 Ill. 551; Burrill on Assignments, (5th ed.) sec. 303; Story on Conflict of Laws, (8th ed.) sec. 411, p. 573.

What are the rights and powers of Catlin, as receiver? First, a receiver appointed under a creditor's bill is merely an officer of the court appointing him, and his rights and powers as such are determined, measured and limited by the jurisdiction of that court.

Neither the laws of a State nor the orders of its courts have any force or effect, *proprio vigore*, beyond its territorial limits. The appointment of Catlin as receiver by the Superior Court, under a creditor's bill, against Clapp & Davies, residents of Illinois, did not vest in said receiver the property of Clapp & Davies situate in other States or Territories beyond the jurisdiction of the court. *Booth* v. *Clark*, 17 How. 322; *Rhawn* v. *Pearce*, 110 Ill. 350; *May* v. *National Bank*, 122 id. 551.

In the case of *Olney* v. *Tanner*, United States District Judge BROWN of New York says: "Upon the authority of the case of *Booth* v. *Clarke*, 17 How. 322, I think there is much doubt whether the complainant, as a receiver, an officer of a State court, has any such standing in a court of the United States sitting in bankruptcy, as entitles him to its aid in a case like this, seeking a preference in contravention of the intent and policy of the Bankrupt act. Outside of the jurisdiction which appoints him, a receiver is not ordinarily entitled to maintain suits except by comity, and this comity does not extend to aiding preferences sought to be acquired by statutory assignments or other proceeding *in invitum*, to the detriment of other creditors whose interests are in the keeping of foreign or independent tribunals." *Booth* v. *Clarke*, 17 How. 322; *Brigham* v. *Luddington*, 12 Blatchf. 237; *Chandler* v. *Siddle*, 10 N. B. 236; *Willets* v. *Waite*, 25 N. Y. 576; *Hout* v. *Thompson*, 5 id. 320; *Runk* v. *St. John*, 29 Barb. 585; High on Receivers, sec. 156; *Betton* v. *Valentine*, 1 Curt. 168; *Hazard* v. *Durant*, 19 Fed. Rep. 471; *Keller* v. *Paine*, 107 N. Y. 83; *Green* v. *Van Buskirk*, 3 Wall. 458; 5 id. 307; 7 id. 189; *Guillander* v. *Howell*, 35 N. Y. 657; *Warren* v. *Jaffray*, 96 id. 248; Beach on Receivers, secs. 254, 255, 680, and notes; *Insurance Co.* v. *Taylor*, 2 Robt. 278; 16 Fed. Rep. 725.

Messrs. KRAUS, MAYER & STEIN, for the appellee:

If the Meriden Britannia Company was proceeded against, the order of the court could have been enforced only through its agent, Sercomb. *Franshaw* v. *Tracy*, 4 Biss. 490; *People* v. *Railroad Co.* 14 Abb. Pr. 171.

Rorer on Inter-State Law (p. 42) says: "The authority of courts of one State to restrain, by injunction, persons within its jurisdiction from prosecuting suits, either in the courts of such State or in courts of other States, against persons or property there situate, of persons resident in the State where the injunction is asked, is fully asserted, not by way of interference

with the course of proceedings or jurisdiction of courts of other States, (for to this end a court has no power,) but upon the principle that courts of equity have full power over persons within their jurisdiction and amenable to their process, to restrain them from proceeding, either within or without the State, to do acts which are wrongful toward other residents, and therefore contrary to equity and good conscience."

This doctrine is now uniformly asserted by the courts of this country and England. High on Injunctions, (2d ed.) secs. 103-106; 2 Story's Eq. Jur. secs. 896-900; *Massie* v. *Watts*, 6 Cranch, 148; *Alexander* v. *Tolleston Club*, 110 Ill. 65; *Dehon* v. *Foster*, 4 Allen, 545; 7 id. 57; *Keyser* v. *Rice*, 47 Md. 203; *Chaffee* v. *Quidnick Co.* 13 R. I. 442; *Railroad Co.* v. *Railroad Co.* 46 Vt. 792; *Engel* v. *Scheuerman*, 40 Ga. 206; *Hendee* v. *Railroad Co.* 26 Fed. Rep. 677; *MacGregor* v. *MacGregor*, 9 Iowa, 65; *Manufacturing Co.* v. *Worster*, 23 N. H. 462; *Briggs* v. *French*, 1 Sumner, 504; *Deklyn* v. *Watkins*, 3 Sandf. Ch. *185; *Claflin* v. *Hamlin*, 62 How. Pr. 284; *Vail* v. *Knapp*, 49 Barb. 299; *Snook* v. *Snetzer*, 25 Ohio St. 516; *Dinsmore* v. *Neresheimer*, 32 Hun, 204; *Richards* v. *People*, 81 Ill. 551; *Patterson* v. *Lynde*, 112 id. 196; *Railroad Co.* v. *Packet Co.* 108 id. 317; *Heyer* v. *Alexander*, id. 385; *Cole* v. *Young*, 24 Kan. 435.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court of the First District affirming an order of the Superior Court of Cook County for the arrest and imprisonment of the appellant on account of his alleged contempt of court. On April 14, 1887, in the case of *Ada S. Havens et al.* v. *Caleb Clapp et al.* then pending in said Superior Court, the appellee was appointed receiver of all the property and effects, real and personal, of the defendants therein, Caleb Clapp and Thomas Davies. Prior to that date Clapp & Davies had forwarded, on

consignment, to Elijah E. Newton, an auctioneer, and commission merchant in Washington City in the District of Columbia, a lot of jewelry, watches and silverware to be by him disposed of for their benefit. So far as appears to the contrary, the goods so consigned were still in the possession of Newton at Washington when the order was entered on April 7, 1888, for the commitment of appellant for contempt.

Within a week or ten days after his appointment as receiver, appellee gave notice of such appointment to Newton and demanded a return of the goods. On May 18, 1887, The Meriden Britannia Company, a corporation organized under the laws of the State of Connecticut, being a creditor of Clapp & Davies, commenced an attachment suit against them for the amount of its claim in the Supreme Court of the District of Columbia, and attached the goods in the hands of Newton.

When appellee was appointed receiver, and for a long time prior thereto, The Meriden Britannia Company did business in the city of Chicago, and had a branch office there. The business manager of the company in Chicago was then, and is now, the appellant, Sercomb. The appellant began the attachment suit in Washington on behalf of the company, making the affidavit necessary to procure the attachment, and caused the property in the possession of Newton to be attached. The affidavit so made by him was sworn to before a Notary Public in Chicago. Appellant had full knowledge of appellee's appointment as receiver before the attachment suit was commenced.

On May 31, 1887, appellee as receiver filed his petition in the case of *Havens et al.* v. *Clapp et al.*, setting up substantially the foregoing facts, and claiming to be the owner of the goods in Washington, and praying for an order upon Sercomb, as manager of said company, to show cause why he should not be attached for contempt in prosecuting the attachment suit and thereby interfering with property belonging to an officer of the court. Appellant appeared and filed a general de-

murrer to the petition. The demurrer being overruled, he elected to stand by it. Thereupon, on June 15, 1887, an order was entered requiring him to furnish proof to the court on June 24, 1887, of having dismissed the attachment suit, and, in default of so doing, that he show cause by ten o'clock on June 25, 1887, why he should not be attached for contempt. The case was then taken to the Appellate Court by writ of error, and the writ was there dismissed because the order of June 15, 1887, was not a final order. After due notice a copy of such judgment of dismissal was filed in the Superior Court, and the proceeding was there reinstated.

Appellee again filed his petition in the Superior Court on April 5, 1888, setting up the previous proceedings as above detailed, charging the failure of Sercomb to obey the order of June 15, 1887, and praying that he show cause by April 7, 1888, why he should not be punished for contempt, etc. To this petition also appellant demurred, and stood by his demurrer upon its being overruled. Thereupon the final order of April 7, 1888, heretofore referred to, was entered.

Under the facts thus stated, did the commencement and prosecution of the attachment suit by Sercomb, as manager of the Meriden Britannia Company, and his refusal to dismiss it as he was required to do by the order of the Superior Court, amount to a contempt of court?

If Sercomb himself had owned the claim sued upon in the attachment suit, and had begun that suit in Illinois, he would have been guilty of contempt upon the authority of the case of *Richards* v. *The People*, 81 Ill. 551. There, in a suit against a railway company, the circuit court of DeWitt county appointed one Wright receiver of the real and personal property and choses in action of the company. Richards, knowing of such appointment, recovered judgments against the company before a justice of the peace in Champaign county, and garnisheed certain persons, who held funds belonging to the company. He continued the prosecution of the suits after

36—128 ILL.

being informed of an injunction, issued against such prosecution and directed to his attorney but not to himself. He claimed that he was not guilty of contempt because the funds in question had not been taken possession of by the receiver; but this claim was not sustained, and his conduct in the prosecution of the garnishee proceedings was held to be a contempt of court. Although the funds had not been reduced to possession by the receiver, the title thereto had vested in him by virtue of his appointment, and such funds could not be seized or attached by creditors of the original debtor with impunity. It was there said: "It is to be remembered that the receiver is the officer of the court and that his possession is the possession of the court itself, and any unauthorized interference therewith, either by taking forcible possession of the property committed to his charge, or by legal proceedings for that purpose without the sanction of the court appointing him, is a direct and immediate contempt of court, and punishable by attachment. * * * It can make no difference in the application of the rule, whether the property is actually or only constructively in the receiver's possession."

The case at bar differs, however, from the Richards case in that, here, the property attached was not in Illinois, but in the District of Columbia. It is insisted by counsel for appellant that the appellee receiver would not be permitted to go into the foreign jurisdiction to get possession of the property in Newton's hands. Undoubtedly the general rule is, that the powers of a receiver are co-extensive only with the jurisdiction of the court which appoints him. (*C., M. & St. P. Ry. Co.* v. *Packet Co.* 108 Ill. 317.) He has no extra-territorial power of official action. But a receiver appointed in one State may, by comity, be permitted to recover the possession of property in another State, provided no citizen or suitor of the latter State is thereby prejudiced or injured. (High on Recvs. sec: 47; *Hunt* v. *Columbian Insurance Co.* 55 Me. 290; *Hoyt* v. *Thompson,* 5 N. Y. 320; *Hoyt* v. *Thompson,* 19 N. Y. 207.)

If appellant had not caused the attachment suit to be brought against the goods in Newton's hands, it does not appear that appellee would not have been allowed to enforce his rights against those goods in the District of Columbia. It is not shown that such action on his part would have injured any citizen or suitor in the District. Newton himself may have eventually surrendered the property to appellee without suit.

It is also said, that, if the appellee should intervene in the attachment suit in the District of Columbia, and set up his claim to the property by virtue of his appointment as receiver, he could not prevail in that suit as against the Meriden Britannia Company, the attaching creditor, upon the general ground that any statutory or judicial proceeding in one State, by which trustees, assignees or receivers are appointed to take possession of the property of insolvent debtors *in invitos,* will not be enforced in another State, and that the property taken under such proceeding is subject to the equities of foreign creditors. (*Rhawn* v. *Pearce,* 110 Ill. 350.) This doctrine has no bearing upon the question involved in the present controversy. The question is not whether appellee by intervening in the foreign suit could be successful therein against the attaching creditor. The question is whether appellant has been guilty of interfering with an officer of the court by causing the attachment suit to be commenced. It is true that the property attached is beyond the jurisdiction of the courts of this State, but the appellant, who caused it to be attached, is in this State and within the jurisdiction of its courts. If the Superior Court had no power to reach the goods in Newton's hands, it had the power to reach appellant, who sought to prevent its receiver from getting possession of the goods. It makes no difference that the property was in a foreign jurisdiction.

In the *Richards* case, Richards brought suit in Illinois to get hold of a fund in Illinois belonging to Wright receiver, and his act was contempt of court because it interfered with the

receiver, and prevented him from reaching such fund. Appellant brings suit in the District of Columbia to get hold of property there belonging to the appellee receiver. His act is just as much an interference with the receiver as though the property was in Illinois. If the attaching creditor can succeed in the foreign suit as against appellee, then the effect of the suit is to take the property from the appellee. If appellee, by intervening in such suit, should defeat the attaching creditor, he will have been forced by the appellant to make a contest for what he may have obtained without a contest. In either case the officer of the court is interfered with in the discharge of his trust.

"Where a court of equity has jurisdiction over the person of a defendant, it is familiar learning that it may make decrees and orders affecting his property which is situated outside of its jurisdiction." (Beach on Receivers, sec. 243.) In *Langford* v. *Langford,* 5 L. J. (N. S.) Ch. 60, which was an equity proceeding in England, where a receiver had been appointed over an estate in Ireland, and where the tenants on the estate had been notified to pay the rents to the receiver, Lord Langford, the defendant in the cause, attempted to collect the rents himself on the ground that the order appointing the receiver was of no force and effect in Ireland; and his course in this regard was held to be contempt of court. It was there said, that the English court had not the means of sending its officers to carry into effect its orders in Ireland, but it had jurisdiction over all persons in England, and could compel obedience to its orders.

In *Chaffee* v. *Quidnick Company,* 13 R. I. 442, a court of equity in Rhode Island, in a proceeding there pending, appointed one Farnsworth receiver of the property of the Quidnick company, and directed him to collect certain monies belonging to the company in the hands of Harding, Colby & Co. in New York. Certain attorneys, who had acted as counsel for the defendants in this proceeding, and had assisted in

framing the order appointing the receiver, had a claim against the Quidnick Company for fees. One of them was a resident of Massachusetts and one of New York. In order to collect their fees they began suit against the Company in a court in New York, and attached the funds in the hands of Harding, Colby & Co. The Rhode Island court, upon being informed of the facts through a petition filed by the receiver, held that the attorneys had obstructed and interfered with the receiver by bringing the suit in New York, and were guilty of contempt, notwithstanding the fact that the attached funds were outside the jurisdiction of the Rhode Island court. (See also *Dehon* v. *Foster*, 4 Allen, 545; *Vermont R. R.* v. *Vermont R. R.* 46 Vt. 792.)

In the case at bar, the appellant was not a party to the original suit, in which appellee was appointed receiver, and did not occupy any such relation to that suit, as was sustained by Lord Langford in the English case, and by the attorneys in the Rhode Island case, to the suits in which they were respectively adjudged to be guilty of contempt. But the position of appellant here is exactly the same as was that of Richards in the case of *Richards* v. *The People, supra.* Richards was not a party to the original proceeding in which Wright was appointed receiver. It only appears that he was within the jurisdiction of the Illinois court. The injunction was not issued until the Receiver had reported to the court that the garnishee proceedings had been instituted.

It is said that the appellant should not be held to be guilty of contempt for refusing to dismiss a suit, in which he himself was not the plaintiff, but in which the Meriden Britannia Company was plaintiff. It is true that the latter company is a Connecticut corporation. But when the attachment suit was begun, the company could be brought into court, under our statute, by service upon appellant as its business manager and agent. Through the presence of its agent here it was subject to the jurisdiction of the Illinois courts, so far as suits,

or proceedings for contempt, against it are concerned. A corporation can only be punished for contempt through its officers, or those acting in aid of it. (*The First Cong. Church, etc.* v. *The City of Muscatine,* 2 Iowa, 69; Rapalje on Contempts, secs. 1 and 48.) We think that it was sufficient, under the circumstances of this case, to compel the appellant as manager of the Company, to answer to the contempt proceeding, without making the Company itself, *eo nomine,* a party to such proceeding, because it is admitted by the appellant upon the face of this record, that he caused the attachment suit to be instituted, that it has since been prosecuted under his order and direction, that it has always been in his power, since said suit was begun, to dismiss it, and that it has always been in his power, *as the manager of said company,* to cause such suit to be dismissed.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*