PETER C. FRICK *vs.* THE HARTFORD LIFE INSURANCE COMPANY.

First Judicial District, Hartford, October Term, 1922.

WHEELER, C. J., BEACH, KEELER, MALTBIE and HINMAN, Js.

In an action here on a judgment of a court of another State, the defendant may challenge the jurisdiction of that court by plea or answer, and, in supplementing a general averment of want of jurisdiction, may set forth the nature and scope of the original litigation in the other State and annex thereto an exemplified copy of the complete record or judgment-roll.

Such supplementary averments may not be essential, but they are not so wholly objectionable as to warrant their being summarily wiped out of existence on a motion to expunge.

In the present case the direct allegation of a want of jurisdiction was stricken out of the defendant's answer upon motion of the plaintiff, but the exemplified copy of the judgment-roll remained. *Held* that inasmuch as this showed upon its face that the foreign court did have jurisdiction to render the judgment sued upon, it could serve no useful purpose to remand the cause for a correction of the erroneous ruling upon the point of pleading. Had such exemplified copy of the full record formed part of the com-

Frick *v.* Hartford Life Ins. Co.

plaint, the defendant might have raised the question of jurisdiction by demurrer.

The mere inability to enforce its judgments extra-territorially, does not deprive a court of its jurisdiction to render a judgment which may be enforced on grounds of comity in any other State and to which full faith and credit must be given under § 1 of Article IV of the Federal Constitution.

A court may, in its discretion, decline to entertain a case, if the nature of the relief demanded is such as to suggest the probability that the court may be unable to enforce its decrees, or that complete justice can only be achieved in the courts of the domicil of the defendant corporation. On the other hand, if the court deems that full justice can be done in the case before it, there is nothing to prevent the court from proceeding with the cause and rendering judgment therein. In either case, there is no question of jurisdiction.

An Iowa court having the parties before it, rendered a money judgment against the defendant for over-assessments which it had levied upon the plaintiff, one of its policy-holders, who had unwittingly paid the same. In an action in this State upon that judgment it was *held:*—

1. That the Iowa court had jurisdiction of the parties and of the subject-matter, and that its judgment was therefore conclusive and entitled to full faith and credit under the Federal Constitution.

2. That its proceedings were apparently free from error, though whether so or not, was immaterial.

Argued October 6th—decided November 27th, 1922.

ACTION in the nature of debt upon a judgment of the District Court of the State of Iowa in favor of the plaintiff for $2,095, brought to and tried by the Superior Court in Hartford County, *Kellogg, J.;* facts found and judgment rendered for the plaintiff for $3,194, and appeal by the defendant. *No error.*

The complaint alleges that on June 24th, 1914, the District Court of the State of Iowa, in an action pending between the plaintiff and the defendant, duly adjudged that the defendant should pay to the plaintiff $2,095.97, with interest at the rate of six per cent; that an appeal was taken by the defendant to the Supreme Court of the State of Iowa, which affirmed the judgment; and that the defendant has not paid

the same. Copies of the judgment and of the opinion
of the Supreme Court of Iowa are annexed to the
complaint.

The answer admits that a "purported judgment"
was rendered as alleged; that it was affirmed on ap-
peal, and has not been paid by the defendant. These
admissions are in the first three paragraphs of the
answer. The fourth alleges that the defendant is a
Connecticut corporation having its home office in
Hartford, and the fifth that the Iowa courts were
without jurisdiction of the person of the defendant,
or the subject-matter of the suit, and without juris-
diction to grant the relief prayed for. The remaining
paragraphs allege as reasons for the asserted lack of
jurisdiction, that the judgment was rendered in a suit
in equity in which the plaintiff alleged that the de-
fendant, being a Connecticut corporation, had levied
assessments against the plaintiff under three certificates
of insurance in the safety fund department of the
defendant company, in excess of the rate of assess-
ment fixed by the certificates, and prayed for an ac-
counting to determine the amount of the over-assess-
ment, a judgment for the amount found due on such
accounting, and an injunction restraining the defend-
ant from thereafter levying assessments against the
plaintiff in excess of the contract rate. It is then
alleged that the defendant demurred to the bill on
the sole ground that the court of Iowa was without
jurisdiction of the person of the defendant or the
subject-matter of the suit, and was without jurisdic-
tion to grant the relief prayed for; that the demurrer
was overruled, and the defendant elected to stand
on its demurrer. The answer then goes on to allege
that the suit was an attempted interference with the
control and management of the internal affairs of the
defendant at its domicil in Connecticut, and an at-

tempted exercise of visitorial powers over a Connecticut corporation; that the courts of Connecticut had sole and exclusive jurisdiction over the subject-matter of the suit; that the judgment deprives the defendant of its property without due process of law; and that the judgment was not within the issues because the complaint prayed for a money judgment based upon a prior accounting, and no such accounting was had, but the judgment was rendered without any accounting. By amendment, an exemplified copy of the complete judgment-roll in the District Court of Iowa was made part of the answer.

The plaintiff then moved to expunge these allegations, 5 to 10 inclusive, for the reason that they were "prolix, uncertain, argumentative, irrelevant and immaterial," and were "merely statements of conclusions of law" and an attempt "to vary and explain the record of the proceedings" in the District Court of Iowa, "as shown by the judgment-roll, Exhibit 1, attached to said answer."

The Superior Court (*Haines, J.*) granted the motion to expunge. When the cause came on for a hearing on the complaint and the answer as deleted by the grant of the motion to expunge, the Superior Court (*Kellogg, J.*) excluded all evidence in support of the allegations in paragraph 5, that the Iowa courts were without jurisdiction, on the ground that all the essential allegations of fact contained in the complaint were admitted.

*Arthur L. Shipman*, for the appellant (defendant).

*Alvan Waldo Hyde*, for the appellee (plaintiff).

BEACH, J.   Strictly speaking, the appeal presents only two questions: whether the motion to expunge

was properly granted, and whether the issue of the jurisdiction of the Iowa court was raised by the deleted answer. Taking, first, the motion to expunge. The complaint does not exhibit by reference the complete record of the Iowa District Court, but only the decree dated June 24th, 1914, and the opinion of the Supreme Court on the appeal from the judgment overruling the demurrer, which is not a conclusive record, and therefore not the equivalent of a series of direct allegations stating fully the scope and nature of the litigation. In other words, the defense of lack of jurisdiction could not have been made by demurrer to the complaint. It follows that the defendant was entitled to make that defense by its answer, and for that purpose to state, more fully than appeared in the complaint by direct allegation or conclusive record, the exact nature and scope of the Iowa litigation. The paragraphs expunged were intended to do this, and by way of amplifying and verifying them the defendant annexed to its answer an exemplified copy of the complete judgment-roll, Exhibit 1, which brought into the Superior Court for the first time a full and authentic record of the pleadings and the issues which were in fact litigated and determined. Evidently these allegations were not so wholly objectionable as to justify a ruling summarily wiping them out of existence.

They are not open to the objection of being merely conclusions of law. The defendant had the right to plead the complete judgment-roll for the purpose of bringing the entire record before the Superior Court, and it might do this in either one of two ways: either without comment, or according to its supposed legal effect; and in the latter case it might, as it did, attempt to substantiate its averment by annexing a copy of the record itself. Practice Book, 1908, § 144, p. 244.

If the record was inconsistent with the averments, the plaintiff's remedy was by demurrer and not by motion.

The motion to expunge did not attack the judgment-roll, which remained attached to the defendant's answer as an admittedly complete and authentic copy of the record of the Iowa court. That being so, there is no possible defense to this action except that the Iowa court was without jurisdiction to render the judgment sued on; and it follows that if the record itself shows on its face that the Iowa court did have jurisdiction, then it would serve no useful purpose to send the case back to have the erroneous ruling on the point of pleading corrected.

The question before us is much simpler than that originally presented to the Iowa court by the defendant's demurrer; for that court had to consider all the latent possibilities of the litigation; whether, for example, it might find itself unable to state the account prayed for, or unable to enforce the injunction prayed for, because it had no visitorial powers over a foreign corporation and no power to reach the defendant's books and records in Connecticut, and no power to regulate the management of its internal affairs. In such cases, when the relief asked for suggests the probability that the court may be unable to enforce its decrees, or that complete justice cannot be done except in the courts of the domicil of the foreign corporation, the jurisdiction may be declined though the defendant is within the jurisdiction of the court. *Sauerbrunn* v. *Hartford Life Ins. Co.*, 220 N. Y. 363, 115 N. E. 1001; *State ex rel. Hartford Life Ins. Co.* v. *Shain*, 245 Mo. 78, 149 S. W. 479. When, on the other hand, the court is of opinion that it can do complete justice and that the relief asked for may be granted without a futile effort to exercise visitorial

powers over a foreign corporation, it will exercise the jurisdiction, as was done in the instant case and in *Hartford Life Ins. Co.* v. *Douds,* 103 Ohio St. 398, 136 N. E. 274. The cases cited are selected from among many others bearing on the point, because each of them is substantially identical with the instant case, and in each of them the question whether the court should or should not take jurisdiction was controlled by the view which the court took of the nature and the probable future scope of the litigation. We are not called upon to discuss the comparative merits of these conflicting decisions, because we are concerned with the record of a litigation which has gone into judgment, and the only question is whether the court did have jurisdiction to render that judgment. The answer is apparent on the face of the record.

In the first place we lay out of the case any claim that the Iowa court did not have jurisdiction of the person of the defendant. It was engaged in business in the State of Iowa, was served with process there according to the laws of that State, and it entered a general appearance in the cause and filed a demurrer to the complaint which admitted all of its well-pleaded allegations of fact. As to jurisdiction over the subject-matter, it appears from the record of the Iowa court and from the Special Acts of the Connecticut General Assembly introduced in evidence in the Superior Court, that the defendant is a stock corporation specially chartered with power to carry on the business of life insurance. It is engaged in that business for profit. Among other sorts of insurance it carried on a form of mutual life insurance known as "The Safety Fund Plan"; the special feature of which is that the mutual insurers each contribute a fixed sum to a so-called safety fund deposited with a trustee, to be divided among the survivors whose

certificates remain in force, if and when the total amount of the outstanding insurance is reduced to one million dollars. The defendant assumed the responsibility of managing this system of mutual insurance, and of calculating, levying and collecting the quarterly assessments necessary to pay matured death claims, in accordance with the contracts expressed in the certificates which it executed in its corporate name. For this service, it made a charge, annually, of $3 per $1,000 of insurance, and in addition a charge of ten cents on each assessment, against each certificate holder, to cover the estimated cost of levying and collecting the same. The plaintiff, Frick, held three certificates for $1,000, each of which provided that "an assessment shall be made upon the holders of all certificates . . . according to the table of graduated rates, given hereon," and the table given on the plaintiff's certificates showed gradually increasing rates at advancing ages up to age sixty, when the rate is fixed at $2.68 for $1,000. There was no provision in the certificates for a higher rate of assessment at any greater age. In practice, the actual quarterly assessment on each certificate was ascertained by multiplying the rate given for the attained age by a "ratio" calculated according to the total amount of death claims which had matured during the quarter. The plaintiff's claim for a money judgment was based on averments that he attained the age of sixty years on September 19th, 1897; that since that date the defendant had wrongfully over-assessed him by using higher rates than $2.68 per $1,000 in calculating the amount of the quarterly assessments levied upon him; that he did not know the exact amount of such over-assessments; that he had but recently discovered the. fact of over-assessments, and had been compelled to pay the amounts demanded to avoid the forfeiture of

his certificates. The prayer for an accounting was in the following form: "That the defendant render an accounting to the plaintiff of the sums of money received from the plaintiff . . . since the 19th day of September, 1897, with interest upon each excessive payment since the date of said payment, at six per cent, and that the plaintiff have judgment against the defendant for the sum so found to be due the plaintiff upon said accounting." No accounting by the defendant was had, but the plaintiff proved by depositions what ratios the defendant had actually used in calculating the several over-assessments complained of, and by applying these ratios to the highest rate given on the plaintiff's certificates, the court ascertained the amount of each over-assessment and rendered judgment accordingly.

It is certain that the Iowa court had jurisdiction of the subject-matter of an action *in personam* based on a contract between a citizen of Iowa and a foreign corporation doing business in that State; and it is equally certain that the mere lack of power to enforce its judgments extra-territorially does not deprive a court having the parties before it of jurisdiction to render a judgment which may be enforced on grounds of comity in any other jurisdiction, and must be given full faith and credit as between the several States of the United States. *Morrill* v. *Morrill,* 83 Conn. 479, 487, 488, 492, 48 Atl. 1; *White* v. *Greene,* 96 Conn. 265, 271, 272, 114 Atl. 112.

It is the defendant's claim that the Iowa court had no jurisdiction to entertain this action, because the record shows that an accounting to ascertain the fact and amount of past over-assessments under the plaintiff's contract must necessarily involve an overhauling of the defendant's books in Connecticut and a revision of the past management of its internal affairs. And

then, in reply to the answer that the Iowa court has not in fact attempted to overhaul its books or revise its ratios, the defendant makes a second claim, that therefore the judgment is invalid because not responsive to the issues raised by the pleadings. We think both of these claims are refuted by the record. The defendant's first claim raises the question of the construction of the written contracts with special reference to the agreement that assessments shall be levied and paid "according to the table of graduated rates given hereon," supplemented and explained by circulars, Exhibits 1 and 2, issued by the defendant and annexed to depositions taken in the cause explaining how the "ratios" for each quarterly call are ascertained. The construction put on these contracts is summed up in the opinion of the Iowa Supreme Court as follows:— "The amount of each quarterly assessment that could be legally levied is determined by two factors, as shown by the provisions of the contract just quoted— one the rate printed on the back of the policy, and the other the ratio or number of times the rate necessary to make up the assessment, this ratio varying according to the amount of outstanding insurance and the amount of death losses to be paid. According to the terms of the contract, the defendant and its officers have no discretion whatever in fixing the ratio. It is a mere matter of arithmetic. The ratio is determined by a computation involving the whole amount of death claims that shall have accrued in the quarter and the total amount of insurance in force. That ratio should be used as a multiple of the plaintiff's rate, taken from the schedule on his policy, which by the terms of his contract since he reached the age of sixty years, should have been $2.68." We think that construction is right, and it follows that no further accounting is necessary, than to apply the ratios

which the defendant used in making the quarterly assessments complained of to the highest rate printed on the plaintiff's contracts, in order to ascertain for what amount the plaintiff might lawfully have been assessed, in each quarter. It may be that the ratios used by the defendant were less than they would have been if the defendant had not wrongfully assumed the right to assess the plaintiff at a higher rate than $2.68 in violation of its contracts. If that be so, the ruling of the Iowa court puts the financial loss resulting from that wrongful assumption on the defendant. We repeat that we think the Iowa court was right in so holding; but even if we thought it was wrong, we could not for that reason refuse to give its money judgment full faith and credit.

Examining the defendant's claim more in detail, it involves the assumption that complete justice could not be done in the Iowa courts in a purely personal action between the plaintiff and the defendant, because the certificates held by the plaintiff were in effect contracts of life insurance upon the co-operative or mutual plan; and that wrongful over-assessments, if any, could not be corrected with due regard to the rights of all the mutual insurers without an elaborate recalculation and readjustment of the ratios used in ascertaining the amounts of the several quarterly calls. This was the theory upon which the New York and Missouri courts declined the jurisdiction in the cases already cited. We think it inapplicable to the case presented by this record, which shows that the defendant corporation undertook to manage this system of insurance for profit and to levy and collect assessments in accordance with the contracts which it executed in its own name. We see no reason why the defendant did not make itself directly liable to the plaintiff for a breach of its contracts, as the Iowa

court and the Ohio court have held. The defendant's theory that the aggrieved certificate-holder has no remedy save by an enormously expensive omnibus accounting in Connecticut between all the certificate-holders, would result in relieving the defendant from any responsibility for its own breach of the contracts by distributing the loss pro rata among all the certificate-holders. This proposition is manifestly unjust as applied to the instant case, for it assumes that the mutual insurers are members of the defendant corporation or of its safety-fund department, in the sense that they control its management of the safety-fund system and are ultimately responsible for its wrongful breaches of contract. On this record that is not true. The certificate-holders, as such, have no legal relation to the defendant corporation except that created by their written contracts. By these contracts the defendant is given the entire management and control of the administration of this system of mutual insurance. To that extent it is the paid agent of the mutual insurers, and its authority in the matter of levying assessments upon each individual certificate-holder is limited by the terms of each separate certificate which it issues. Such a paid agent makes himself liable in damages when he wrongfully or negligently exceeds his authority and thereby inflicts pecuniary loss on his principal.

The defendant's other claim, that the judgment is void because outside of the issues, is practically disposed of by what has already been said; for since the Iowa court acted within its jurisdiction in treating the action as calling, not for an omnibus accounting between the mutual insurers, but only for an accounting between the plaintiff and the defendant, the judgment is plainly within the issues. Defendant, being in court, could not defeat the action by refusing

to defend on the merits. If the court was able to state the account without the defendant's assistance, it might do so; and as the Supreme Court of Iowa has said: "The court was able to take the account itself from evidence furnished from other sources than an accounting by the defendant." We repeat once more that even if we thought the accounting inadequate and the result erroneous, we could not for that reason alone refuse to give full faith and credit to the judgment for money damages. No attempt is made in this action to enforce the decree enjoining the defendant from continuing to assess the plaintiff at a higher rate than the contract permits. And we do not discuss that phase of the defendant's argument.

There is no error.

In this opinion the other judges concurred.