## RECEIVERS MIDDLESEX BANKING COMPANY *vs.* THE REALTY INVESTMENT COMPANY.

First Judicial District, Hartford, January Term, 1926.

WHEELER, C. J., CURTIS, KEELER, MALTBIE AND BANKS, Js.

A nonresident defendant upon whom service of process is made by mail, is not thereby subjected to the jurisdiction *in personam* of the courts of this State, nor does he waive the defect by answering to the merits after an adverse judgment has been rendered against him upon a plea to the jurisdiction; but if he goes further, and by counterclaim or otherwise, seeks affirmative and distinctive relief beyond the issues presented upon the complaint, he will be held to have submitted himself voluntarily and in person to the jurisdiction of the court.

A State court, by appointing a receiver of a corporation, thereby acquires a jurisdiction over the corporate property within that State, which cannot be controlled by the courts of any other State, including the one where the receivership was first instituted.

If the protection of its own citizens and of others whose claims are equitably before it so requires, a court of a State in which an ancillary receivership is pending may order a final distribution of the assets in the hands of its receiver; but, otherwise, it may, and ordinarily will, direct its receiver to turn over the assets to the receiver of the court of primary appointment.

A plea to the jurisdiction may be treated as raising an issue of law if the allegations of the complaint or petition to which it is addressed are, for the purpose of the plea, assumed to be true.

Whether or not a court of this State will issue an injunction against a nonresident, over whom it has acquired jurisdiction *in personam,* rests within its sound discretion.

Receivership proceedings were instituted against the plaintiff and defendant corporations in the Superior Court in this State and in the courts of several western States, in which the defendant owned farm lands. In 1915, the receivers and five national banks, three of which were nonresident and all of which were creditors of the defendant and had filed claims against it in this State, executed a contract whereby the banks advanced to the receivers the sum of $25,000 for the purpose of carrying on cropping operations on the western lands; and the receivers issued to the banks as evidence of the indebtedness, certain receipts which were to constitute a first and prior lien upon the gross returns from such

Receivers Middlesex Banking Co. v. Realty Inv. Co.

operations, and the balance, after the deduction of expenses, was to be divided among the banks in proportion to the amount each had advanced. In 1916, the receivers rendered an account to the banks which accepted the several sums tendered to them. Thereafter the banks questioned the accounting and threatened to commence proceedings in the courts of South Dakota, where a part of the farm lands was located, to compel the receivers to pay them additional sums. The receivers then brought the present petition to the Superior Court in this State, praying that the account. rendered. the banks in 1916 be declared true and final and that the banks be enjoined from prosecuting the threatened action in the courts of South Dakota or of any State. The banks resisted the petition upon the ground, among others, that the Superior Court had no jurisdiction over the proceeds of cropping operations conducted upon lands located outside of this State, and that any questions arising out of the disposition of the proceeds of the operations must be settled in the courts of the various States where the lands were located and where the ancillary receiverships were pending. *Held:*

1. That the subject-matter of the petition before the Superior Court was the contract between the receivers and the banks; and that, therefore, the question of jurisdiction depended largely upon construing that instrument with reference to its objects and purposes and the intent of the parties.

2. That, while it must be conceded that the contract contemplated that operations were to be conducted in other States and that the approval of the courts of those States was proper and necessary before the contract could be fully executed, nevertheless, it was apparent that the parties intended to deal with the receivers in their capacity as officers of the Superior Court of this State, and that the loan, which was the subject of their agreement, was not divisible or apportioned to any particular lands, but was an aggregate or lump sum to be derived generally from the operations as a whole in all the States and eventually to be brought to this State and here distributed.

3. That, in the light of the nature of the contract and the intent of the parties, and in view of the further fact that the receivers had actually, with the approval of the courts of the other States, transferred the proceeds of the cropping operations to themselves as receivers of the Superior Court and had deposited them in banks in this State, the Superior Court unquestionably had jurisdiction over the subject-matter of the petition.

4. That the Superior Court did not err in granting relief according to the prayers of the receivers.

Argued January 6th—decided February 23d, 1926.

WRIT OF ERROR to reverse a judgment of the Superior Court in Middlesex County rendered upon a motion of receivers in a receivership proceeding, the court, *Warner, J.,* having sustained demurrers to pleas to the jurisdiction, and thereafter, upon trial of the issues to the court, *Kellogg, J.,* judgment having been rendered for the receivers. *No error.*

The receivers filed a motion in the nature of a petition, in which they alleged that as receivers both of the plaintiff and defendant corporations, in April, 1915, they made a contract with the five respondents, all national banking corporations and all creditors of the defendant, by which the respondents were to advance to them certain moneys to enable them to carry on cropping operations during the season of 1915 upon lands which, subject to certain mortgages, were owned by the defendant, and which were located in States other than Connecticut, among them South Dakota; that this contract was made in Connecticut; that the receivers filed a motion in the Superior Court of this State in the county where the receivership is pending asking for its approval and authority to proceed with the cropping operations; that the court thereupon made an order giving that approval and directing that the proceeds of the operations should be accounted for and delivered to the respondents, in accordance with the terms of the contract; that the receivers had already been appointed receivers of the defendant corporation by the Circuit Court of the Fifth Judicial District in South Dakota, and the contract with the respondents was in May, 1915, also approved by that court; that the receivers proceeded with the cropping operations, and in December, 1916, rendered to each of the respondents a final account showing the amounts received from the respondents, the proceeds from the

cropping operations, disbursements and charges, and payments made to the respondents, a copy of which account was attached to the motion; that with this account, they submitted to each of the respondents a statement of the amount due it under the contract; that these accounts were approved by the respondents and they accepted the sums tendered by the receivers in full settlement of the amounts due under the contract; that subsequently the respondents sought and were seeking to compel the receivers, by order of the Circuit Court in South Dakota, to pay over to them additional sums, and to question the correctness of the account and to involve the receivers in expensive, wasteful and unnecessary litigation; that none of the respondents is located in South Dakota, and no interest of any local creditor in South Dakota is involved or ought to be protected; that only a part of the lands upon which the cropping operations were conducted are located in South Dakota, and the court there could not adjudicate upon the accounts in relation to lands outside of that State; that if the respondents are entitled to prosecute the proceedings in the courts of that State, they can also prosecute their demands in numerous other States, thus causing a multiplicity of actions, and waste and expense to the estate; and that the funds and proceeds of the cropping operations have been transferred under proper authority to Connecticut and deposited in banks here. The receivers asked, first, a judgment declaring that the final payment by them to the respondents and its acceptance constituted full satisfaction of their obligations to the respondents under the contract and were final and binding upon them, and second, an injunction restraining the respondents from prosecuting any legal proceedings in any other State in which they should seek

to obtain from the receivers any additional sums on account of the cropping operations.

The agreement referred to in the petition recites that the lands in question were owned by the defendant corporation; that the plaintiff corporation owned and controlled the defendant corporation; that the receivers had been appointed for both of them, by the Connecticut court, and, as regards the defendant, by the courts of other States, including South Dakota; that the respondents were creditors of both corporations, holding notes made by the defendant and indorsed by the plaintiff; that to preserve the value of the lands, and incidentally of the mortgages on them, the receivers needed funds to provide for their cultivation, and these the respondents were willing to advance; and that certain of the lands were or would be leased to tenants under agreements by the provisions of which the rentals would be paid by turning over to the receivers a certain portion of the crops raised. The agreement then provided that the respondents would "upon the execution of this contract and its approval by the Superior Court of the county of Middlesex aforesaid, or of any judge thereof having jurisdiction," pay to the receivers an aggregate sum of $25,000, each respondent to advance a part proportioned to the indebtedness owed to it by the two corporations; each of the respondents was to receive "a good and sufficient receipt, or evidence of indebtedness as shall be approved by said court, or judge, payable at such time as shall be fixed and determined by said court, or judge, and such receipt, or evidence of indebtedness shall contain such other provisions as said court, or judge, shall decree, and shall bear interest at five per cent."; the money advanced by the respondents was to be used by the receivers in buying seed grain and in furnishing other means of cultivating and

cropping the lands and the necessary superintendence for the season of 1915, as the judgment of the receivers dictated; the receipts given the respondents "shall constitute and be a first and prior lien on the gross returns or crop rentals for the season of 1915, and upon the sale of the same the said receipts, or evidences of indebtedness shall be first paid out of the gross amount received from such sale and before the payment therefrom of any other charge or expense whatsoever"; after these receipts had been discharged, there was to be deducted from the proceeds such expenses and charges as had been necessarily and fairly incurred in the cropping operations and the sale of the crop, and the balance was to be divided among the respondents in proportion to the amount each had advanced, to be paid over to them by the receivers, and to be applied by them upon the notes of the defendant corporation held by them; and where the receivers themselves cultivated the lands, only such proportion of the proceeds was to be regarded as coming within the terms of the contract as would have resulted had the lands been leased.

All of the respondents filed pleas in abatement and to the jurisdiction. Three of them are located out of the State, and they alleged that service of the motion was not otherwise made upon them than by a copy of it, of an application for an order of temporary injunction attached to it, and of a rule to show cause, sent to them at their respective addresses by registered mail. The court sustained a demurrer to the plea and the respondents then filed a motion seeking permission to answer or otherwise plead to the petition "without prejudice to their right of appeal from the order" sustaining the demurrer; this motion was granted, and they, along with the two resident banks, then filed an answer to the petition. In this answer they not

only raised issues of fact upon the allegations of the petition, but also pleaded affirmatively that the accounts rendered them by the receivers were incorrect and contained false and fraudulent statements, and that, if they accepted the sums paid to them as final settlements of the matter, it was because they believed and relied upon these statements; and they prayed an order directing the receivers to make a true and just account of the cropping operations and to pay the amounts which thereby would be shown to be due them. Later, the respondents amended their answer to include allegations that if the misrepresentations made by the receivers were not fraudulent, they were at least due to a misapprehension on the part of the receivers as to the terms of the contract or as to other material matters of fact or law.

The court made an order directing that the issues be separated and those be first tried which had to do with the approval by the respondents of the accounts submitted to them by the receivers and their acceptance of the amounts paid them as full settlement of the sums due them under the contract, and with the question whether there were any fraudulent representations or other circumstances within the scope of the answer which invalidated that settlement and rendered it ineffective. The judgment recites that, these issues being tried and found for the receivers, the other issues in the case were later tried and also found for them; and then adjudges that the receivers did make a final settlement with each of the respondents, and paid to each of them all that was due under the contract, and that there was no fraud, mistake or other circumstances justifying the setting aside of the settlement made with them; and it granted an injunction substantially as requested in the motion.

*Ernest A. Inglis,* for the plaintiffs in error.

*Francis W. Cole,* with whom was *Ernest W. McCormick,* for the defendants in error.

MALTBIE, J.   The service made upon the three nonresident respondents by sending to them by registered mail copies of the petition and other documents would not in itself subject them to the jurisdiction of the court *in personam.   Harris* v. *Weed,* 89 Conn. 214, 221, 93 Atl. 232.   The matter does not, however, stop there. Under the allegation of the petition, the primary issue was as to the correctness of the account rendered to the respondents and the finality of the settlement claimed to have been made by the receivers with them, and the trial court, issue being made only upon its allegations, could not have restated the account between the parties, for to do so would have been to go beyond the scope of the facts alleged and farther than the relief sought.   By their answers, however, the respondents laid the basis for, and prayed an order for, a new and correct account.   They went beyond the point of resistance to the claims of the receivers, and sought affirmative relief for their own ends and purposes.   The distinction between the claims under the petition and those under the answer is thrown into relief by the order of court, which directed that the issue of the correctness and finality of the settlement made with the respondents should first be tried and determined, before the others presented by the pleadings should be considered.   Whether or not, by merely answering over to escape the penalty of a default where an adverse judgment has been rendered upon a plea to the jurisdiction *in personam,* a defendant waives his right further to contest the jurisdiction, is a matter upon which courts differ, and we have

chosen as the better view that which holds that the
defect is not waived. *Coyne* v. *Plume,* 90 Conn. 293,
297, 97 Atl. 337. But where the defendant, after his
plea is overruled, seeks affirmative and distinctive re-
lief beyond the scope of the issues presented upon the
complaint, he must be held to have subjected himself
voluntarily to the court's jurisdiction. *Merchants
Heat & Light Co.* v. *Clow & Sons,* 204 U. S. 286, 27
Sup. Ct. 285; *Thompson* v. *Greer,* 62 Kan. 522, 64 Pac.
48; *Chandler* v. *Citizens National Bank,* 149 Ind. 601,
49 N. E. 579. "A different conclusion would enable a
litigant, while insisting that he is not in court, to
demand affirmative relief, which can only be granted
upon the theory that the court has jurisdiction of the
cause and of the parties thereto. It would be obvi-
ously unjust to permit a party who has interposed an
objection to the jurisdiction of the court over his
person to avail himself of the chance to obtain a favor-
able affirmative judgment against the plaintiff by
voluntarily pleading a counterclaim, and by obtaining
a trial upon its merits, and, at the same time, preserv-
ing his right to reverse any judgment which might be
rendered against him." *Lower* v. *Wilson,* 9 So. D. 252,
254, 68 N. W. 545. The nonresident respondents must
be held to have submitted themselves to the jurisdic-
tion of the court *in personam.*

The two resident respondents, and the nonresident
respondents as well, attack the jurisdiction upon the
further ground that the subject-matter involved in the
petition consisted of the returns from and the proceeds
of cropping operations conducted upon lands located
outside this State and the disposal of those returns,
and that those returns and proceeds were assets of the
respective receiverships in the various States in which
the lands were located. In so far as this claim is
concerned, the pleas were evidently designed to raise,

and were treated in the trial court as raising, an issue of law upon the allegations of the petition, assuming them, for the purpose of the plea, to be true. *Sanford* v. *Bacon,* 75 Conn. 541, 544, 54 Atl. 204. The trial court sustained a demurrer to the pleas, and so held them insufficient. As the question was of the jurisdiction of the court over the *res,* the respondents might have raised the issue again upon the facts proven at the hearing upon the merits. *Woodmont Association* v. *Milford,* 85 Conn. 517, 524, 84 Atl. 307. The record does not indicate that this was done. But the respondents do in the writ of error directly challenge the jurisdiction of the trial court upon this ground; many of the considerations bearing upon the issue of jurisdiction are pertinent to the questions raised as to the right of the court to grant the particular relief it did; and the issue is one of the highest import because it involves the respective powers of our courts and those of another State. We shall therefore consider it, not upon the basis of the allegations of the petition, but upon the facts found by the judgment to have been proven. We are not so fully apprised of all the facts as we might wish, because the procedure adopted has not imported into the record any special finding, but, on the other hand, we may properly assume that the record as made presents the issues as favorably for the respondents as it would if all the facts were specially found. *Lamenza* v. *Shelton,* 96 Conn. 403, 413, 114 Atl. 96.

We do not question the general principle, upon which the respondents base their contention, that where a court in one State, by appointing a receiver of a corporation, takes into its possession the property of the corporation in that State, it obtains a jurisdiction over that property which cannot be controlled by any other court, even the one where the receivership was first

instituted. *Reynolds* v. *Stockton,* 140 U. S. 254, 271, 272, 11 Sup. Ct. 773; *Farmers Loan & Trust Co.* v. *Lake Street Elevated R. Co.,* 177 U. S. 51, 61, 20 Sup. Ct. 564; *Sands* v. *E. S. Greeley & Co.,* 31 C. C. A. 424, 88 Fed. 130; *Low* v. *Pressed Metal Co.,* 91 Conn. 91, 97, 99 Atl. 1; 2 Tardy's Smith on Receivers (2d Ed.) § 702. Our query is, does that rule operate to deprive the Superior Court of jurisdiction to render the judgment it did? That can only be determined by an examination of the nature and subject-matter of the controversy before the court.

To carry out the plan of that contract of necessity involved action by the receivers which they could take only as appointees of the courts of other States and for which they would be answerable to those courts. The lands were in their possession as such appointees, and could only be leased or cultivated by them in that capacity; and the crops or crop rentals from the lands would be held by them as such appointees. But clearly the parties contemplated that in other respects the receivers were to act under the contract in their capacity of appointees of the Connecticut court. That intent finds expression in the provisions requiring the approval of the contract by that court, and giving it authority to direct as to the form and provisions of the receipts to be given for the money loaned. So it follows from the recital that the receivers of the plaintiff corporation were parties to the contract only as they were appointees of the Connecticut court. So, while it does not definitely appear of record that the respondents had presented claims against the receivers in Connecticut, yet that is the only reasonable conclusion from the terms of the contract, particularly the provision that, after the sums loaned with interest had been repaid to them, the other amounts coming to them under the contract should be applied upon the

notes held by them, and from the failure of the record to indicate in any way that the respondents had presented claims against the receivership in any other State; 'in fact, respondents' brief concedes that they had'presented claims against the receivers in this State. Of more significance, however, in determining the intent of the parties, is this: .The very necessities of the situation required action which could be taken only by the receivers in this jurisdiction; for the lands lay in several States, subject to the orders of several courts, but the loans were advanced in one lump sum, to be spent as the receivers thought best, on any or all of the lands, and the amounts to be repaid to the respondents were to be based upon the total crop rentals received by the receivers in all States. The provisions of the contract with reference to the "first and prior" lien to secure the amounts loaned and the interest on them, above quoted, and the provisions which specify the method by which the further amounts to be paid to the respondents should be determined, show that the payments were to be made, not from the proceeds of the crop rentals in the States where the lands lay, but from the aggregate of all such proceeds, regardless of the State of their origin, brought together into one fund. The respondents obviously were to have no claim or right to any part of crops produced on the lands as such or even to the proceeds of the sale of the crops in the hands of the receivers in the particular States where the lands lay. Without distinguishing between the capacity of the receivers as representatives of the plaintiff and of the defendant, and, as regards the latter, without designating the courts by virtue of whose appointment they were to act, the contract provides that they were to sell the crops which were realized from the rental or cultivation of the lands, were to bring into one fund the amounts received regardless

of the location of the lands, were to make deductions for charges incurred, whether relating to particular lands, or chargeable to the cropping operations as a whole, and so were to determine and pay to each of the respondents the amount due to it. When we consider the nature of the duties which the receivers were thus called upon to perform, it becomes at once apparent that only in a capacity in which they could deal with and bring about cropping operations upon the lands in various States and could gather together into one fund the proceeds of them all, could they be in a position to carry on that part of the transaction which had to do with the borrowing of the money from the respondents and the payments to be made to them in return. The contract was in intent and of necessity, one with the receivers of the Connecticut court, and only that court was in a position to determine the amounts due to the respondents and to compel their payment.

For such part of the money loaned by the respondents as was used in cultivating the lands in that State and for such articles as were bought with that money and taken there for use, for the manner in which the receivers conducted the cropping operations there and sold the products therefrom, and for the use of the proceeds received, the South Dakota courts might require the receivers to submit to their orders, and the courts of this State could not in any way control those of South Dakota in the exercise of that power. A court in which a receivership is pending, though it be ancillary to one instituted elsewhere, will be sedulous to protect the rights of the citizens of its own State and those of others having claims which ought in equity to be brought under its own protection, and it may itself direct the final distribution of the assets in the hands of its receiver; but it may, and where

there are no rights entitled to its peculiar protection it ordinarily will, direct its receiver to turn over to the receiver in the court of primary appointment the assets or funds in his hands; and the decision as to which of these two courses it will take rests in its sound discretion. *Fawcett* v. *Iron Hall,* 64 Conn. 170, 185, 29 Atl. 614; *Low* v. *Pressed Metal Co.,* 91 Conn. 91, 97, 94 Atl. 1; *Brooks* v. *Smith,* 290 Fed. 33; *Lewis* v. *American Naval Stores Co.,* 119 Fed. 391, 397; *Kirker* v. *Owings,* 98 Fed. 499, 511; *Smith* v. *Taggert,* 87 Fed. 94; *Buswell* v. *Order of the Iron Hall,* 161 Mass. 224, 235, 36 N. E. 1065; *Baldwin* v. *Circuit Judge,* 101 Mich. 119, 134, 59 N. W. 432.

Approval of the contract by the courts of the States in which the lands lay was no doubt proper, if not necessary; to effectuate its terms, use must be made of those lands, and the proceeds derived from crops raised upon them must be transmitted from the jurisdiction of those courts to that of our own; and the receivers could not properly make such use of the lands without that approval, nor justifiably proceed with the contract unless they were assured in advance that the proceeds might be transmitted to Connecticut when the cropping operations were ended, here to be disbursed as provided in the contract. The purpose of the transaction was to preserve the value of the lands in South Dakota as much as elsewhere; that end was of importance to the receivership there and was made possible by the funds to be secured under the contract. This would afford ample reason for the granting of authority by the courts of that State for the transmission of the proceeds of the crop rentals to this State. Paragraph fifteen of the petition alleges that "the funds or moneys and proceeds of said cropping operations have been transferred from the various States under proper authority by your receivers to

Connecticut and deposited in banks in Connecticut";
and this allegation the judgment specifically finds to be
true. We can only interpret this finding in the judg-
ment as meaning that the receivers, as appointees
of the courts in the several States and under authority
of those courts, had transferred the proceeds of the
cropping operations to themselves as receivers under
appointment by our own court and had deposited them
in banks in this State. Those proceeds being in this
State, properly transmitted to and held by the receivers
in their capacity as appointees of our court, in our
court is the proper place to determine opposing claims
as to them. *Davis* v. *Holden,* 92 Conn. 96, 101 Atl.
485; *Merritt* v. *American Steel-Barge Co.,* 79 Fed. 228,
231; *McKinney* v. *Landon,* 209 Fed. 300. The pleas
to the jurisdiction were not well taken.

The trial court, having not only jurisdiction of the
parties but also of the subject-matter, had the power
to protect that jurisdiction, and its receivers, by an
injunction against the prosecution of the litigation the
respondents were instituting in South Dakota. *Cole*
v. *Cunningham,* 133 U. S. 107, 10 Sup. Ct. 269; *Stewart*
v. *Laberee,* 109 C. C. A. 351, 354, 185 Fed. 471, 474;
*Sercomb* v. *Catlin,* 128 Ill. 556, 21 N. E. 606; *Chafee*
v. *Quidnick Co.,* 13 R. I. 442; *Vermont & C. R. Co.* v.
*Vermont Central R. Co.,* 46 Vt. 792, 796. It is true
that three of these respondents are banking institutions
located out of the State, but, having jurisdiction over
them *in personam,* whether the trial court should issue
an injunction against them rested in its sound discre-
tion; *Frick* v. *Hartford Life Ins. Co.,* 98 Conn. 251, 256,
119 Atl. 229; *White* v. *Greene,* 96 Conn. 265, 272, 114
Atl. 112; and we cannot hold that it did not exercise
that discretion wisely. Indeed, having voluntarily en-
tered into a contractual relationship which could only
be resolved in justice to them and the receivers by the

courts of this State, it hardly lies with them to maintain that they are entitled to litigate their rights under the contract in other States. *Chesapeake & Ohio Ry. Co.* v. *Swayze*, 60 N. J. Eq. 417, 424, 47 Atl. 28; *Parsons* v. *Charter Oak Life Ins. Co.*, 31 Fed. 305, 309. The respondents' further contention, that the receivers had themselves submitted the matter to the South Dakota court, and so can hardly now be heard to deny its jurisdiction, is hardly borne out by the record before us; for it does not appear that they had gone or attempted to go further there than to make such an accounting to that court as was necessary to show to it a proper compliance with the duties owed to it by reason of its approval of the contract and such a performance of the terms of the contract as would justify their discharge from further obligation in that court for their conduct relating to it. But had they sought from that court a more sweeping approval of their acts under the contract, that would not in any way debar them from asking here an adjudication as to conflicting claims upon a fund which they had brought into this State by proper authority and were here holding.

The respondents question the right of the receivers to have an adjudication that the settlement they made with the respondents was final and conclusive. They say that that settlement could not be regarded as an accord and satisfaction, because there was no pending dispute between the parties, and hence that there can be no basis for a judgment that it so far bound them as to preclude them from claiming a larger amount, if that was their legal due. They fail to note the scope of the issues litigated under the petition and the answer to it. The petition alleged that the account submitted to the respondents showed the receipts and disbursements made by the receivers under the con-

tract, and that the statement made with it to each of the respondents showed the amount it was entitled to receive. The answer denied the correctness of the amount, and, inferentially at least, the accuracy of the statement, and it then went on to allege errors in the account, made, as the original answer said, falsely and fraudulently, or, as the amendment to it said, by mistake; and it prayed an order directing the receivers to make a true and just account. The judgment not only finds the issues for the receivers, but specifically finds that they paid each of the respondents all that was due to it under the contract. The judgment establishes that the receivers had fully accounted to the respondents for all that was due to them and that the respondents have no further claim under the contract. Whether the receivers could properly claim that there had been an accord and satisfaction with each of the respondents is now of no consequence.

There is no error.

In this opinion the other judges concurred.