THOMAS R. FITZSIMMONS *v.* INTERNATIONAL ASSOCIATION OF MACHINISTS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued May 2—decided June 8, 1939.

*Charles M. Lyman,* for the appellant (defendant).

*Edwin G. Hayes,* for the appellee (plaintiff).

The appellant filed a motion for an order that the evidence be printed, which was denied.[1]

---

[1] PER CURIAM. The defendant having taken an appeal in this case and secured a finding, filed assignments of error seeking many additions to and corrections in the finding. In order to present these assignments of error to this court it was required, under § 346 of the

HINMAN, J. The officer's return on the writ and complaint showed service by leaving, in Middletown, a copy thereof with "Eric Peterson, Vice President and

Rules, to file a transcript of the evidence with its assignments of error, unless the court, upon written application for good cause shown, should grant a definite extension of time. Its counsel had in his possession a transcript of the evidence, but with the laudable purpose of reaching an agreement with opposing counsel for the omission of a substantial portion of it from the printed record and relying upon a mistaken recollection as to the procedure followed in an earlier case, failed to file it with the assignments of error or to get an extension of time to do so. He thereafter took up with the plaintiff and his counsel the matter of eliminating certain portions of the transcript from the evidence to be printed. There followed conferences and correspondence, as to which there is some dispute between the parties, and which resulted in a failure to reach any agreement. Defendant's counsel then made a written motion to the trial court for an extension of time within which to file the transcript. The trial court denied the motion. In its memorandum of decision it pointed out that the defendant's counsel had the transcript in his possession when the assignments of error were filed and stated that "there exists no 'good cause' why it could not be filed on time. Under the circumstances and in face of plaintiff's objection the court has no basis for the exercise of discretion."

As the interchanges between counsel in regard to printing the evidence all took place after the expiration of the time allowed for the filing of the transcript they are not material in considering the motion now before us. *La Croix* v. *Donovan,* 97 Conn. 414, 417, 117 Atl. 1, is the only case wherein we have attempted to define what constitutes good cause for an extension of time within which to file papers necessary to perfect an appeal. In the portion of that opinion which is apt to the situation before us, we said: "But the mere inadvertence of counsel by itself should rarely, if ever, be deemed 'due cause' for such extension, unless the trial judge were of the opinion that a doubtful question of law was involved in the appeal, making a decision upon the appeal one of reasonable doubt, or unless the circumstances indicate that justice probably would not be fully served if the appeal be denied."

In this case the trial court apparently did not consider the exception to the general rule that mere inadvertence of counsel is not ordinarily ground to grant an extension. Proceedings for a review of a ruling such as that made by the trial court are informal; its failure to grant the extension is not assignable error; but a motion that the trial court be directed to take appropriate action to perfect the appeal may be presented to this court, as was done in

General Manager of the International Association of Machinists." The defendant pleaded in abatement on the ground that it is a voluntary association, and that the process was not otherwise served than upon Peterson, a vice president of the association, while it should have been served upon the presiding officer, the secretary or the treasurer of the defendant. Section 5471 of the General Statutes provides that "In any action against a voluntary association service of process may be made upon the presiding officer, secretary or treasurer." "Where a particular method of serving process is pointed out by statute, that method must be followed, and the rule is especially exacting in reference to corporations." *Amy* v. *Watertown,* 130 U. S. 301, 316, 9 Sup. Ct. 530; Bowers, Process and Service, § 311. The issue upon this ground of abatement was whether Peterson, by virtue of being a vice president of the association, came within the statutory designation as "the presiding officer" of the association, which was admitted by plaintiff's answer to the plea to be a voluntary association, and was therefore to be served as provided by § 5471 of the General Statutes. The designation of a particular officer or officers upon whom service may be made excludes all others. *Watertown* v. *Robinson,* 69 Wis. 230, 34 N. W. 139. Consonant

this case. *France* v. *Munson,* 123 Conn. 102, 108, 192 Atl. 706. Had the trial court held that no question of law was involved in the appeal which made the decision one of reasonable doubt or that the circumstances of the case were such as to make it likely that justice would probably not be fully served if the motion for an extension were denied, we would have reviewed its ruling merely for the purpose of determining whether it had abused its discretion. As, however, it did not consider this element in the situation, we have reviewed the record, including the request for a finding, draft-finding and finding, and have concluded that the inability of the defendant, lacking the printed evidence, to present the assignments of error seeking additions to or corrections in the finding will not be likely to result in a miscarriage of justice.

The motion is denied.

with the definition of "preside," a presiding officer is one who occupies "the place of authority, as of president, chairman, moderator, etc., to direct, control, or regulate proceedings as chief officer." Webster's New International Dictionary (2d Ed.). The term can be construed fairly to mean only the chief executive officer, such as president, chairman or one occupying an analogous position or performing like duties, *Dale v. Blue Mountain Mfg. Co.*, 167 Pa. St. 402, 405, 31 Atl. 633.

Upon the hearing on the plea in abatement the only evidence offered was a copy of the defendant's constitution and by-laws. By the former it is provided that the international president shall preside at all meetings of the grand lodge and serve as chairman of the executive council, which is composed of the president, the general secretary-treasurer, and seven general vice presidents. The vice presidents are assigned by the international president "to such divisions or territories as are necessary to promote the best interests of [the] organization" and are required to file weekly with the international president a report of their activities and expenses. Upon this evidence the only tenable conclusion is that one of these vice presidents is not to be regarded as a "presiding officer" within the meaning contemplated by the statute. Therefore there was error in overruling the plea in abatement. That the defendant's counsel, who appeared specially for the purpose of the plea, after it was overruled entered a general appearance and the defendant answered and contested the case on its merits, does not work a waiver of its right to pursue the appeal from the ruling with an appeal from the judgment finally rendered. *Parker, Peebles & Knox v. El Saieh*, 107 Conn. 545, 560, 141 Atl. 884; *Receivers Middlesex Banking Co. v. Realty Investment Co.*, 104 Conn. 206, 213, 132 Atl. 390;

*Harkness* v. *Hyde,* 98 U. S. 476, 479; see also *State ex rel. Adams* v. *Crawford,* 99 Conn. 378, 121 Atl. 800; *World Fire & Marine Ins. Co.* v. *Alliance Sandblasting Co.,* 105 Conn. 640, 136 Atl. 681; *Montgomery* v. *Branford,* 107 Conn. 697, 142 Atl. 574.

The conclusion that the plea in abatement must be sustained is decisive of the present action, but in view of the obvious moral merits of the plaintiff's claim as revealed by the record of the trial, for such suggestion as may be afforded with respect to the prosecution of another action, we discuss the issue, raised on the trial upon the merits and pressed upon appeal, of the applicability of the Statute of Frauds to the situation disclosed by the present record. In so doing we assume, although we do not decide, that the facts are sufficient to support the trial court's conclusion that the apparent authority of the defendant's agent was such as to make his contract binding upon the defendant.

The finding includes the following facts which are deemed relevant to the question to be discussed: The defendant is an unincorporated organization having its principal office in Washington, D. C., and grants charters to local unions throughout the country. It levies a per capita tax or dues on each local, and has authority to also levy assessments when necessary. "The funds so raised are used to pay salaries and expenses, to advance the working interests of the membership as a whole, including authorized strikes and the relief of members on strike." Local unions are forbidden to call a strike without the approval and consent of the grand lodge. In the spring of 1936 a strike was called, with such sanction, at the Remington Rand plant in Middletown by three locals of the defendant and a local of another craft union. Strikes were also in progress at plants of that company in other cities,

and the general strike was managed by a protective committee consisting of a delegate from each plant and under the general guidance, supervision and assistance of an acting vice president of the grand lodge assigned to the territory. The strike at Middletown was managed by a strike committee, consisting of delegates from the locals involved, of which Hjalmar Anderson was chairman; he also was a member of the general protective committee. George Bowen was the acting vice president assigned to the territory involved in this strike. His duties included acting as organizer, adviser and general assistant in the conduct of the strike and "doing generally everything which his knowledge and experience suggested to maintain the morale of the strikers, encourage them to carry the strike to success and aid them to that end." Early in the summer of 1936 several striking members of the Middletown locals were arrested on criminal charges and the plaintiff, whose office is located in New Haven, was employed, with a Middletown attorney, performed the legal services required to dispose of the cases pending in the City Court and was paid therefor by the local strike committee from funds supplied by the Middletown locals. There were other and later similar arrests and a number of the arrested persons were bound over to the Superior Court. The plaintiff appeared for these persons in the City and Superior Court until about September 20th, at which time he had rendered services and made disbursements amounting to about $2000, had been paid $500 and had been promised further payments by the Middletown strike committee. On September 29th he was paid $300 from the same source but was informed that the locals were without funds and unable to raise or pay the balance remaining due. The plaintiff thereupon stated that he would decline to handle the remaining cases unless

he was paid up to date. This information was communicated to Bowen and he "instructed Anderson, the local strike chairman, to get [the plaintiff] to come and finish the cases and that the International would take care of the bill." Anderson, through the local attorney, so informed the plaintiff. The cases were scheduled for trial on the following morning. "Relying on this promise made by Bowen" the plaintiff went immediately to Middletown and thereafter disposed of all remaining cases, including one appeal to the Superior Court. The charges made by the plaintiff for all his services and disbursements from the beginning amounted to $2720; he has received the payments of $500 and $300 above mentioned and a subsequent payment of $100, from the same source, leaving a balance of $1820 unpaid.

It was stipulated on the trial that the services were entirely satisfactory and that the charges were just and reasonable. The defendant, however, in addition to claiming that the facts did not show that Bowen had either such actual or apparent authority as to bind the defendant to a contract with the plaintiff, contended that the contract was within the Statute of Frauds in that the local unions continued to be liable after the claimed contract was made. The trial court held the plaintiff barred by that statute from recovering from the defendant for work done before the making of the contract but not as to that performed thereafter and rendered judgment for $935, which it found to be the reasonable value of the latter services. These conclusions were assigned as error on this appeal.

The findings above stated, notwithstanding the instruction by Bowen to get the plaintiff "to come and finish the cases and that the International would take care of the bill," are hardly of sufficient definiteness

to sustain a holding, which is implicit in the conclusions reached, that a new contract was created by which the defendant assumed liability for the services of the plaintiff rather than an undertaking collateral to a continuing obligation upon the local committee or unions. The further finding, that after the termination of his services, the plaintiff "did not press his demand for payment against either the Middletown Locals or the International for several months being informed by Anderson and others that the Locals were broke, that the strike had not been settled, and that at a later date the matter would be adjusted" perhaps might be interpreted, notwithstanding the plaintiff's claim in this action for recovery of the entire amount from the defendant, as not incompatible with a claim of liability of the locals for the services prior to the contract through Bowen, and of the defendant for those subsequently rendered. The finding states, however, that the plaintiff, commencing in August, 1937, wrote several letters to defendant's president, and sent him a bill for his services, to none of which he received a reply. These letters and bill and a letter addressed to Bowen are made a part of the finding and therefore must be considered with the other facts found. In the letter to Bowen dated August 5, 1937, the plaintiff said: "After my services were completed I rendered a bill to Mr. Anderson, the chairman, a portion of which was paid . . . ; the outstanding balance is $1820. I was advised several months ago by the committee at Middletown that in the event the local unions did not take care of the bill the International would be responsible." "I . . . know that if the leaders at Washington care to assist they can provide for the customary weekly relief money and can also advance the necessary funds to pay all outstanding bills." While the plaintiff's first letter to the defend-

ant's president was primarily an appeal for relief for strikers who had not been re-employed, he mentioned that he had "a personal interest in the matter because to date the several organizations in Middletown are indebted to me in the sum of $1820. I have not pressed them to any extent because I realized the difficulties which confronted them." In the next letter he stated: "I made a contract with the committee at Middletown. . . . My final bill was slightly in excess of $3000. . . . The balance of my bill is now $1820, and nothing has been paid on it for approximately one year. . . . When it came to the point where I was demanding some action I was advised directly by Mr. Newman, representing your Association, that if the bill was not paid in due course the International Association would take care of it. Mr. Bowen . . . also asked me to be patient and that in the event I did not receive my money from Middletown I could look to the International for payment." "I think you will agree with me that I have been extremely fair and lenient in the matter and am not asking too much at this time in requesting that the International advance the money for my bill, and, if they see fit at a later date, to be reimbursed from the Locals at Middletown." The final letter, dated November 8, 1937, includes: "I have not received any reply to my recent letter requesting that the International Association pay the fee due me. . . . Mr. Anderson, chairman of the Strike Committee at Middletown . . . is heartily in accord with my request to you. . . . He states that the situation at Middletown is unchanged and that the present outlook is such that they will be unable to take care of my bill in the immediate future. . . . I am enclosing . . . an itemized bill for services rendered." This bill was made out to Hjalmar Anderson, Chairman Central Labor Office, Middletown, and covers all the services

rendered by the plaintiff from the beginning, credits the $900 payments on account made by the Middletown committee, and shows a balance due of $1820.

An undertaking by a party not before liable, for the purpose of securing or for the performance of the same duty for which the party for whom the undertaking is made continues liable is within the Statute of Frauds, General Statutes, § 5982, as "a special promise to answer for the debt, default or miscarriage of another." *Sadd* v. *Siegelbaum,* 124 Conn. 383, 385, 200 Atl. 346; *Parker* v. *Benton,* 35 Conn. 343, 350; *Dillaby* v. *Wilcox,* 60 Conn. 71, 76, 22 Atl. 491; Restatement, 1 Contracts, § 180. The declarations above quoted seem to indicate that the promise by the defendant's agent was construed, understood and regarded by the plaintiff, not as a direct undertaking that the defendant would become primarily liable for and pay him for his services, either those previously performed or those which were rendered thereafter, but, like that in *Warner* v. *Willoughby,* 60 Conn. 468, 22 Atl. 1014, as a promise to see the plaintiff paid for his work, to pay if the local committee did not; that it was not the plaintiff's understanding that the local committee was not to continue liable to pay him or that its liability was affected by the undertaking of the defendant. If the undertaking relied upon is "that of a person not before liable for the debt or duty of another who continued liable to pay for work performed under the contract," it is "a collateral undertaking and within the statute of frauds." *Warner* v. *Willoughby,* supra, 471. The situation presented in such a case is not one where the plaintiff no longer gave any credit to the original obligor but relied entirely upon the undertaking of the defendant as a primary obligation. *Reed* v. *Holcomb,* 31 Conn. 360, 363; *Bartolotta* v. *Calvo,* 112 Conn. 385, 391, 392, 152 Atl. 306; *Smith* v.

*Delaney,* 64 Conn. 264, 275, 29 Atl. 496. Unless the effect which, on the present finding, must be accorded these declarations of the plaintiff can be modified, they appear to constitute an obstacle to recovery by the plaintiff from this defendant, so long as the Statute of Frauds is invoked, notwithstanding the manifest equities in the plaintiff's favor and the unenviable attitude of the defendant in resorting to this technical defense to avoid payment of confessedly reasonable compensation for services which a promise, although we are compelled to regard it on this record as collateral, manifestly induced the plaintiff to resume and complete.

There is error; the judgment is set aside and the case remanded to the Court of Common Pleas with direction to sustain the plea in abatement.

In this opinion the other judges concurred.