# E. Paul Kovacs and Company, Inc. *v.* James Blumgarten

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued June 7—decided July 27, 1962

*J. Harold Merrick,* for the appellant (defendant).

*Abram W. Spiro,* with whom was *Robert J. Wolfe,* for the appellee (plaintiff).

SHEA, J. The plaintiff sued to recover the reasonable value of services rendered in excavating an area of the defendant's land in connection with the construction of a swimming pool. The court rendered judgment for the plaintiff, and the defendant has appealed, claiming that the court erred in refusing to find certain facts which were admitted or undisputed, in finding facts without evidence, in reaching conclusions when the subordinate facts do not support them and in overruling certain claims of law.

The finding, with certain additions to which the defendant is entitled, recites the following facts: On or about June 1, 1959, the defendant entered into a written contract with Connecticut Refinite Corporation, hereinafter called Refinite, for the construction of a swimming pool on the defendant's land in Ridgefield. The contract provided a fixed price for all of the work, including the required excavation. After the execution of the contract, but prior to June 15, 1959, the plaintiff orally agreed with Refinite to do the excavation work, and Refinite agreed to pay the plaintiff on a time and material basis. On June 15, the plaintiff started to excavate and shortly thereafter encountered a rock ledge which would require blasting. The plaintiff's superintendent, Leroy Burke, inspected the site and ordered suspension of further work because of the possibility of damage to the defendant's house and well, which were in close proximity to the site of the swimming pool. Burke believed that

Refinite was in a shaky financial condition, and he was concerned about Refinite's ability to pay the added cost of blasting. The defendant telephoned Burke and asked why the work had been suspended. Burke told the defendant that the plaintiff did not want to do the job because of the added expense of blasting and because Refinite had not provided for this expense in its contract with the defendant. Burke tried to induce the defendant to change the location of the pool so that less blasting would be required. The defendant refused to consider the suggestion and told Burke that the defendant's contract with Refinite required the latter to construct the pool in the place which had been selected and that the cost of blasting was included in the contract. Burke told the defendant that the plaintiff would undertake the job if the defendant would promise to pay for the plaintiff's work. The defendant requested the plaintiff to do the excavation work and necessary blasting and orally agreed with the plaintiff to pay the reasonable value of the work. The plaintiff obtained consent from Refinite to do the excavation work for the defendant directly and to be paid by the defendant for that work. On June 20, the plaintiff recommenced operations and completed all the excavation work, including the necessary blasting. The reasonable value of the work was $1454.17, and no part of that sum has been paid.

The court concluded that (1) the defendant orally agreed with the plaintiff to pay it the reasonable value of the excavating and blasting work to be performed; (2) the plaintiff on June 20, 1959, when it undertook to perform these services for the defendant, was no longer working for the contractor; and (3) the plaintiff completed its work for the defendant in accordance with the oral agreement between

them. It is apparent from these conclusions that the judgment was based on the theory of a contract by the defendant to pay the plaintiff for the excavation work. The defendant contended, in his claims of law before the trial court, that the promise to pay was unenforceable under the Statute of Frauds, General Statutes § 52-550, because it was a promise to answer for the debt of another and was not in writing. In the light of this claim of law, it was necessary that the trial court determine whether the defendant's promise was an original undertaking or was, as the defendant claimed, collateral to the undertaking of Refinite.

The plaintiff's contract with Refinite required the plaintiff to perform the same work for which it now claims a right to recover from the defendant. The defendant was already under an obligation to pay Refinite for that work, and Refinite was under an obligation to pay the plaintiff for it. An undertaking, by a party not before liable, for the purpose of securing, or for the performance of, a duty for which the party for whom the undertaking is made continues liable is within the Statute of Frauds. *FitzSimmons* v. *International Assn. of Machinists,* 125 Conn. 490, 500, 7 A.2d 448, and cases cited. It is a special promise to answer for the debt, default or miscarriage of another. General Statutes § 52-550; *FitzSimmons* v. *International Assn. of Machinists,* supra. Under our practice, the defense of the Statute of Frauds need not be specially pleaded. Practice Book § 102. The defense was available to the defendant under his general denial. Ibid. Unless Refinite was relieved of its obligation to pay the plaintiff for the work, any oral promise made by the defendant to the plaintiff would, under the circumstances of this case, constitute a collateral

undertaking within the Statute of Frauds and would be unenforceable.

In our view of the case, it is of crucial consequence to consider the claim made by the defendant that two of the findings which bear on the nature of the defendant's promise to the plaintiff are unsupported by the evidence. Unfortunately, one of those findings is couched in language of doubtful meaning and might, perhaps, have been attacked on that ground. Practice Book § 392 (c). That finding states that the plaintiff "obtained consent from . . . [Refinite] to do the excavation work for the defendant directly and be paid by the defendant for that work." We may consult the memorandum of decision to obtain a better understanding of the finding. *Stern & Co.* v. *International Harvester Co.,* 146 Conn. 42, 48, 147 A.2d 490; *Vitale* v. *Gargiulo,* 144 Conn. 359, 366, 131 A.2d 830; Maltbie, Conn. App. Proc. § 152. The memorandum, however, has not helped us to discern the true meaning and significance of the finding. The memorandum states that "the defendant had so conducted himself as to justify the plaintiff in believing that . . . [its] services as an excavator in doing the job on the swimming pool had been requested by the defendant and that the plaintiff, relying thereon, had rendered the services in the expectation that . . . [it] would be paid for the services by the defendant." At another point, the court stated that the defendant had testified that he had paid Refinite for the entire job in accordance with its written contract. The court also stated that Refinite had gone into bankruptcy prior to the institution of this action. These observations do not offer any aid in resolving the uncertainty caused by the language of the finding. If anything, they seem to fortify the claim

made by the defendant that the language cannot be construed as the equivalent of finding that the agreement between the plaintiff and Refinite had been rescinded by mutual agreement.

The second finding attacked by the defendant states that the defendant requested the plaintiff to do the excavation work and the necessary blasting and orally agreed with the plaintiff to pay "the reasonable value" of the work. This finding and the one previously mentioned are essential to the plaintiff's case. Unless they mean, when considered together, that there was a rescission of the contract between Refinite and the plaintiff, followed by an original undertaking by the defendant to pay the plaintiff if it would do the work, the plaintiff's case must fall.

If we treat the challenged findings as having a meaning consistent with recovery by the plaintiff, we find that they are unsupported by the evidence and must be stricken. There is evidence in the plaintiff's appendix to the effect that a man purporting to represent Refinite was "in on" a conversation between Burke and the defendant "about the fact that . . . [the defendant] was going to pay . . . [the plaintiff]" and that the representative "agreed upon it." Burke also testified, however, that this man did not take part in the conversation and that he "just listened, more or less, to my advice." Burke did not know the man's name but testified that he questioned the man about his position with Refinite and about the extent of his authority to act for that company. In answer, the man told Burke that he had authority to do anything on the job. This evidence was clearly objectionable. The authority of an agent cannot be proven by the declarations of the agent. *Cole* v. *Myers,* 128 Conn. 223, 228, 21

A.2d 396; *Bailey* v. *Bobecki,* 117 Conn. 653, 654, 166 A. 677. Since no objection was made, however, the evidence was in the case for whatever it may have been worth on its face. *Sears* v. *Curtis,* 147 Conn. 311, 317, 160 A.2d 742; *Sizer* v. *Lenney,* 146 Conn. 457, 459, 151 A.2d 889. The evidence that the representative of Refinite "agreed upon it" does not support a finding that Refinite and the plaintiff agreed on a rescission of the contract between them and is of little significance, since it is impossible to determine the content or extent of any agreement to which the word "it" referred.

Although there is evidence that the defendant told Burke that he would pay the plaintiff, there was no evidence that the agreement was to pay "the reasonable value," nor anything to show that the promise was an original undertaking as distinguished from a promise to answer for Refinite's obligation to pay the plaintiff. These two findings must therefore be stricken.

The finding of subordinate facts, with the two crucial paragraphs stricken from it, does not support the conclusions reached by the court, and the judgment predicated on those conclusions cannot stand.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion BALDWIN, C. J., KING and ALCORN, Js., concurred.

MURPHY, J. (concurring in the result). The defendant in his brief quotes the provision as to extra compensation for blasting in the contract which he had with Refinite and also states that the plaintiff rendered his bill jointly to Refinite and the de-

fendant at the conclusion of the excavating work. From these references, I take it that the contract and the bill were marked in evidence as exhibits. However, the finding makes no reference to any exhibits, so that they are not part of the record before us on this appeal. In this situation, any reference to them in brief or argument is contrary to our practice. The defendant should have ensured their inclusion in the finding by timely motion to the trial court.

The appendix to the defendant's brief includes the testimony of Burke who, on cross-examination, identified his bill to Refinite and the defendant. His explanation, if any, of the inconsistency of his claim of a separate primary contract with the defendant and his billing of the defendant and Refinite jointly, does not appear. It would have been interesting, if not novel. I suspect that the bill antedated Refinite's bankruptcy and that the idea of a primary contract was conceived after that event. A proper record would have been enlightening.