HELEN KRON *v.* TILLY THELAN, EXECUTRIX
(ESTATE OF LEON KRON)

SUPERIOR COURT        FAIRFIELD COUNTY        FILE NO. 145186
AT BRIDGEPORT

172

Memorandum filed Febraury 5, 1973

*Brody & Brody,* of Bridgeport, for the plaintiff.

*Lepofsky & Lepofsky,* of Norwalk, for the defendant.

FitzGerald, J.. The plaintiff is the widow of Leon Kron, late of Norwalk, Connecticut. Her alleged cause of action is against his estate through the medium of his sister, Tilly Thelan, the executrix of his estate. Hereinafter Leon Kron will be referred to as the decedent or the deceased husband.

The complaint alleges in substance that on or before September 25, 1970, the decedent owned certain described premises in Norwalk, Connecticut, with a dwelling thereon; that on or before that date he "entered into an oral agreement by the terms of which the plaintiff agreed to provide her own funds to furnish and complete portions of the aforementioned premises and [the decedent] agreed to change the title from [his name] to the names of [the decedent] and the [plaintiff] . . . with rights of survivorship, in consideration for the aforementioned expenditures." The complaint further alleges that the plaintiff in reliance upon that agreement expended the sum of $19,050; that the decedent prior to his death on March 14, 1971, did not effect the agreed change of title; and that the plaintiff duly presented a claim to the decedent's estate which is annexed to the complaint, which claim was denied in writing by the defendant executrix. The prayers

for relief are a decree "for conveyance or that the title be otherwise vested in her," damages, and "[s]uch other relief as may in equity appertain."

To the paragraph of the complaint which alleges that "[t]he plaintiff expended the sum of $19,050.00 in reliance on the aforementioned agreement," the defendant directed a more specific statement requesting that the plaintiff itemize "each and every item of expense referred to" in that paragraph, stating the dates of the incurred expenses, the amounts of such, and copies of any written receipts or canceled checks. The plaintiff complied to the extent of listing nineteen dates and amounts, and in many instances receipts and canceled checks. An item of $12,150 (the largest item listed), referring to cash turned over to the decedent in "Spring of 1970," is not verified by a receipt or a canceled check. At the trial it was the plaintiff's testimony that this large sum of money and some other items of a smaller nature were given over by her to the decedent in cash, for which no written evidence was obtainable.

By way of answer the defendant admitted that on or before September 25, 1970, the decedent owned the Norwalk premises described in the complaint; that the decedent prior to his death on March 14, 1971, did not effect any change of title to those premises; and that the plaintiff filed a claim against the estate which was denied. The remaining allegations of the complaint—the alleged agreement and the alleged expenditures by the plaintiff of $19,050 in reliance upon that agreement—were denied by the defendant. In addition, the defendant pleaded specially that "[t]he purported agreement alleged by the plaintiff, if proven, would violate the statute of frauds and accordingly would be ineffectual." In reply the plaintiff denied the subject of the special

defense. Parenthetically, it may be noted that under our practice the defense of the Statute of Frauds need not be specially pleaded. Practice Book § 120; *E. Paul Kovacs & Co.* v. *Blumgarten,* 150 Conn. 8, 11.

So stood the pleadings when the case was tried to the court on October 24 and November 16, 1972. The hiatus between the two trial dates was occasioned by the illness of one of the parties and the court's ability to have the case resume trial on a date which would fit into a heavy schedule.

The following facts may be said to be undisputed. The plaintiff and the decedent met about seventeen years ago (in the fall of 1956) following the death of her first husband, by the name of Ferro. A daughter is issue of that marriage. At that time the plaintiff commenced to work for the decedent in his store in Norwalk, in which he conducted an appliance business under the name of Norwalk Sales and Supply Company, Inc. The employment lasted five or six years. At some point during that time the relationship between the plaintiff and the decedent became close, described by the plaintiff at the trial as that of a couple keeping company. It continued on that basis until their marriage some years later on August 1, 1970.

The decedent had been previously married. That marriage ended in divorce in 1958 or thereabouts. Two daughters are issue of that marriage, Marsha and Debroha Kron, the older of whom became nineteen years of age in October, 1972, and the younger seventeen in January, 1973. They have lived with their mother since the divorce of their parents to date hereof.

As already noted, the decedent died on March 14, 1971. His death was sudden and unexpected. He left a will dated June 17, 1970, which is pending

probate and in which his sister, the defendant herein, is the named executrix. Certain provisions in that will are of passing, if not present, moment. To his former wife, Janice, the decedent gave $15,000; to the plaintiff, who was then Helen Ferro and to whom he subsequently became married on August 1, 1970, he gave $15,000 providing she was not his wife at the time of his death, but if they were married and living together as husband and wife at the time of his death, he gave to her in that event one-third of his gross estate; and to his daughters Marsha and Debroha, issue of his first marriage to Janice, he gave the rest, residue and remainder of his estate in equal shares. The amount of the decedent's estate at the time of his death was not put into evidence.

The plaintiff and the decedent were living together as husband and wife at the time of his death on March 14, 1971; and, as noted, they had married on August 1, 1970. After the marriage until the decedent's death, the plaintiff was given $200 a week by him. Apparently this weekly sum of money was given by the decedent to the plaintiff to take care of household bills.

On July 2, 1970, the decedent purchased and took title to the premises in question, located on Tarone Drive in Norwalk. The house thereon was newly constructed and the purchase price was $53,000. On July 20, 1970, eighteen days later, the plaintiff sold her own home in Norwalk for a net price of $31,035.45. It is the claim of the plaintiff that she and the decedent at all times in their relationship over the years exchanged moneys with each other as occasion required and that in the spring of 1970 it was agreed between them that she would share the expense of purchasing a home for them to live in, and assist in the cost of furnishing that home, which she claims she did in respect to the Tarone

Drive property, title to which the decedent acquired in his own name on July 2, 1970, upon the decedent's agreement to have title to the property changed to their joint names with rights of survivorship.

The court finds it difficult to accept in toto the plaintiff's version of matters. Granting that the plaintiff after her marriage may have made certain contributions for household furnishings and the like, as does many a woman similarly situated, that does not in itself prove the alleged agreement with the decedent respecting the ultimate status of the title to the property. But that apart, many of the receipted bills and canceled checks drawn on the checking account of "Helen Ferro" bear dates subsequent to the marriage on August 1, 1970, when the plaintiff admittedly was receiving $200 weekly from the decedent for "household bills." As to the considerable moneys in cash claimed to have been paid out by the plaintiff to the decedent for such project in the spring of 1970, one may ask the source of such a monetary reservoir. A widow of many years with a young daughter to support over the years would not ordinarily have available such cash in the absence of supporting proof of a concrete and durable nature. Neither receipts nor canceled checks support these substantial claimed payments. In short, such claimed payments cannot be substantiated from any standpoint. In regard to such claimed amounts, as was said in cases such as *Yantz* v. *Dyer,* 120 Conn. 600, 603, and *Clark* v. *Diefendorf,* 109 Conn. 507, 514, to cite but two, "the living claimant occupies a position of great advantage by reason of the death of the other party to the transaction and it is necessary to provide a check against possible imposition and fraud."

That the plaintiff has offered the testimony of some three or four witnesses to the effect that the decedent on one or more occasions prior to his death

had said that he had to get the question of title between the plaintiff and himself taken care of does not in itself prove that it was said by him to any of such witnesses. "Facts are not admitted or undisputed merely because they are not contradicted. The question of credibility is for the trier." *Lewis* v. *Lewis,* 162 Conn. 476, 481, quoting from *Shakro* v. *Haddad,* 149 Conn. 160, 162.

Friends have been known to give testimony favorable to a friend which can be at odds with the true situation. The testimony of all witnesses must be evaluated. Attorney George Lepofsky of Norwalk was called as a witness by the plaintiff. For many years he had represented both the plaintiff and the decedent as an attorney; he was also a friend of long standing to both. It was he who represented the decedent and the plaintiff in their separate and respective real estate transactions in 1970, and it was his office which drew the decedent's will of June 17, 1970. It was brought out on the cross-examination of this witness that neither the plaintiff nor the decedent ever told him anything about such an arrangement regarding the future status of the title to the property in question. If there had been in fact such an agreement between the plaintiff and the decedent, it would seem only natural that one or both of them would have disclosed this to their mutual attorney when he was settling the account as to the property sold by the plaintiff and that acquired by the decedent. That there was no such disclosure to their mutual attorney and friend of long standing weighs the scales heavily against the plaintiff's claim of there having been such an agreement.

And of equal if not greater significance is the manner in which the decedent had his will drawn by a member of the Lepofsky law office on June 17, 1970, a few weeks prior to his planned marriage of August 1, 1970. Not only did the decedent make

express provisions therein for his former wife, Janice, and the two daughters of that earlier marriage but he provided for the contingency of his future marriage to the plaintiff so as not to have the will revoked under General Statutes § 45-162, concerning implied revocation by a testator who marries after a will is made. Here again, on this aspect, the scales necessarily weigh heavily against the plaintiff's claim in conjunction with other aspects.

It is found that the plaintiff has failed to support her claim of the existence of such an agreement on the evidence as a whole. Consequently her case fails.

But apart from the foregoing finding, yet of equal significance, the Statute of Frauds is an insurmountable barrier to the plaintiff's position. Her claim against the estate of her deceased husband as attached to the complaint is summarized in the second and last paragraph of the claim: "Request is hereby made for you [the executrix] to allow this claim and cause said premises to be transferred in its entirety to me." And this was the plaintiff's claim for relief at the trial and in her submitted briefs.

In *Anderson* v. *Zweigbaum,* 150 Conn. 478, 481, a case sufficiently similar on its facts and in principle to that at bar, our Supreme Court said: "Since the claimed agreement called for the conveyance of real estate and was entirely oral, it was unenforceable because of the Statute of Frauds." To the cogent statement of that principle the Supreme Court cites *Schempp* v. *Beardsley,* 83 Conn. 34, 37. In addition, the trial court at bar cites *Grant* v. *Grant,* 63 Conn. 530, 538, and cases of other jurisdictions there cited.

While the stated principle quoted from *Anderson* does not preclude a claim against the estate of a decedent for the reasonable value of services rendered by a plaintiff claimant pursuant to an oral

agreement, express or implied, that is not the situation at bar. The plaintiff's case as presented is quite different, and the relief sought is a decree for conveyance or that title to the real estate in question be vested in her. The plaintiff's submitted claim of law at the conclusion of the evidence was to the effect that part performance on her part took the agreement out of the Statute of Frauds. This claim must be, and is, overruled.

Further discussion is not required. In any view to be taken of the case, judgment is required to be entered, and is so entered, for the defendant executrix and the estate of the late Leon Kron.

It is so ordered.