### COMMISSIONER OF TRANSPORTATION *v.* GRACE L. KAHN (SC 16714)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued October 31, 2002—officially released January 7, 2003

*Robert T. Morrin,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (plaintiff).

*Tim Wentworth,* for the appellees (substitute defendants).

*Opinion*

KATZ, J. In this consolidated action, the plaintiff, the commissioner of transportation (commissioner), appeals[1] from the trial court's judgment sustaining the

---

[1] The commissioner appealed from the trial court's judgment to the Appellate Court. We then transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

applications filed by the defendant, Grace L. Kahn,[2] for reassessment of damages following the commissioner's condemnation of easement interests in a portion of Kahn's property pursuant to General Statutes § 13a-73 (b).[3] The commissioner claims that the trial court improperly denied its motions to dismiss Kahn's applications. Specifically, the commissioner claims that the trial court lacked jurisdiction under General Statutes § 13a-76[4] to consider Kahn's applications because: (1)

---

[2] During the pendency of this appeal, Kahn died. Thereafter, the Appellate Court granted the motion by Kahn's attorney to substitute the coexecutors of Kahn's estate as parties to this action. Because of the confusing and unusual designation of the original parties, and because of the subsequent substitution of parties, for purposes of clarity, we refer herein only to the commissioner and Kahn.

[3] General Statutes § 13a-73 (b) provides in relevant part: "The commissioner may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or improvement of any state highway or for a highway maintenance storage area or garage and the owner of such land shall be paid by the state for all damages and the state shall receive from such owner the amount or value of all benefits resulting from such taking, layout, alteration, extension, widening, change of grade or other improvement. The use of any site acquired for highway maintenance storage area or garage purposes by condemnation shall conform to any zoning ordinance or development plan in effect for the area in which such site is located, provided the commissioner may be granted any variance or special exception as may be made pursuant to the zoning ordinances and regulations of the town wherein any such site is to be acquired. The assessment of such damages and of such benefits shall be made by the commissioner and filed by him with the clerk of the superior court in the judicial district in which the land affected is located, and such clerk shall give notice of such assessment to each person having an interest of record therein by mailing to each a copy of the same, postage prepaid, and, at any time after such assessment has been made by said commissioner, the physical construction of such layout, alteration, extension, widening, maintenance storage area or garage, change of grade or other improvement may be made. . . ."

[4] General Statutes § 13a-76 provides: "Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated or, if said court is not in session, to any judge thereof for a reassessment of such damages or such benefits so far as the same affect such applicant, and said court or such judge, after causing notice of the pendency of such application to be given to said commissioner, shall

Kahn had failed to file the applications within the six month period prescribed under the statute; and (2) the commissioner was not served with process or notice of the applications in accordance with the requirements of the statute. We reject the commissioner's claims and, accordingly, affirm the judgment of the trial court.

The record reveals the following facts and procedural history. Kahn owned two parcels of land in Franklin, situated on the southwestern and eastern sides of Route 207, known as 515 Pond Road and 520 Pond Road. On June 4, 1996, the commissioner filed in the Superior Court, pursuant to his authority under § 13a-73 (b), a notice of condemnation and assessment of damages in order to obtain a perpetual easement interest in both parcels of land for the purpose of reconfiguring a portion of Route 207 to improve the curve of the highway.[5] The commissioner assessed the damages at $34,100. On

appoint a judge trial referee to make such reassessment of such damages or such benefits. Such trial referee, having given at least ten days' notice to the parties interested of the time and place of hearing, shall hear the applicant and said commissioner, shall view the land and take such testimony as such trial referee deems material and shall thereupon reassess such damages and benefits so far as they affect such applicant. If the amount of the reassessment of such damages awarded to any such property owner exceeds the amount of the assessment of such damages by the commissioner for such land, such trial referee shall award to such property owner such appraisal fees as such trial referee determines to be reasonable. If no appeal to the Appellate Court is filed within the time allowed by law, or if one is filed and the proceedings have terminated in a final judgment finding the amount due the landowner, the clerk shall send a certified copy of the assessment of the commissioner and of the judgment to the Comptroller, who shall, upon receipt thereof, draw his order upon the Treasurer in favor of the landowner for the amount due him as damages. The pendency of any such application for reassessment shall not prevent or delay the layout, extension, alteration, widening, change of grade or other improvement of any such highway. As used in this section, a trial referee means a referee appointed pursuant to subdivision (1) or (2) of subsection (a) of section 52-434 and designated a trial referee pursuant to subsection (b) of said section."

[5] Pursuant to the notice of condemnation, the commissioner also took a temporary easement over other portions of Kahn's property for the construction of driveways to be used during the highway construction.

December 5, 1996,[6] Kahn filed an application in the trial court, pursuant to § 13a-76, for a reassessment of damages, claiming that the compensation was inadequate for the property taken and that completion of the highway project would require the use of portions of Kahn's property that were not included in the notice of condemnation and for which she was not being compensated.

On February 13, 1997, the commissioner filed a second notice of condemnation and assessment of damages in order to obtain an easement interest in another small portion of 515 Pond Road. This additional portion, which the state had taken during the course of the highway construction, was not included in the first notice of condemnation. The commissioner assessed the value of this taking at $1300. On July 29, 1997, Kahn filed in the trial court an application for reassessment of the property interest subject to this second notice.

From December 5, 1996, the date on which Kahn filed her first application for reassessment, until November, 1997, the commissioner did not receive any notice that Kahn had applied for reassessment of the two notices of condemnation. In November, 1997, Kahn sent to the commissioner's counsel copies of her applications for reassessment and appraisals that she had obtained on the value of the takings.

On October 1, 1998, Kahn moved for sanctions against the commissioner, claiming that the commissioner had failed to respond to discovery requests that she had served on the commissioner on July 28, 1998. On October 30, 1998, Kahn filed a memorandum in support of her reclaimed motion for sanctions, and on November 4,

---

[6] While Kahn's application was dated December 6, 1996, the filed application was stamped as received by the court on December 5, 1996. This discrepancy is rendered insignificant by our ultimate conclusion in this opinion.

1998, Kahn moved for default due to the commissioner's failure to appear. Kahn certified to the court that she had mailed copies of both documents to the commissioner's counsel. On November, 4, 1998, the court clerk granted the motion for default and, thereafter, the trial court, *Hon. D. Michael Hurley*, judge trial referee, granted the motion for sanctions.[7]

On March 16, 1999, Kahn moved to consolidate the two applications[8] and for the appointment of a judge trial referee, in accordance with § 13a-76; see footnote 4 of this opinion; which the trial court, *Mihalakos, J.*, granted. On April 30, 1999, the commissioner's counsel filed an appearance and moved to dismiss both applications, claiming that the trial court lacked jurisdiction to entertain the matter because the commissioner never had been served and because the six month statute of limitations prescribed in § 13a-76 had expired. On December 6, 1999, the trial court, *Hurley, J.*, conducted a hearing on Kahn's applications for reassessment. Prior to hearing evidence on Kahn's applications, Judge Hurley heard argument on the commissioner's motions to dismiss and thereafter denied the motions, concluding that Kahn had complied with the requirements under § 13a-76. At the conclusion of the testimony by Kahn's

---

[7] The record contains two orders by the trial court granting each of the motions for sanctions on two different dates, although the motions were identical.

[8] The issue of consolidation of the applications appears to have contributed to the confusing procedural posture of this case. Apparently, the trial court clerk created a file and assigned a separate docket number to each of the two notices of condemnation filed by the commissioner. The clerk then created additional files and docket numbers when Kahn filed each of her applications for reassessment. In her October 30, 1998 memorandum in support of her reclaimed motion for sanctions, Kahn represented to the court that, on October 14, 1997, Judge Handy had consolidated her two applications. In her March 16, 1999 motion for consolidation, however, Kahn asked the court to consolidate all four files, the two containing the commissioner's notices and the two containing Kahn's applications for reassessment.

witnesses,[9] Judge Hurley issued his findings and adopted the value of the takings set by Kahn's expert appraiser in the amount of $178,000.[10] Thereafter, Judge Hurley rendered judgment for Kahn in accordance with his findings. This appeal followed.[11]

I

The commissioner first claims that the trial court improperly denied its motions to dismiss Kahn's applications because Kahn had failed to file the applications within the six month period mandated by § 13a-76. See footnote 4 of this opinion. Therefore, the commissioner contends, the trial court lacked subject matter jurisdiction to entertain the matter. At oral argument before this court, the commissioner recognized that the filing of Kahn's second application for reassessment was

[9] The commissioner offered no witnesses and introduced no evidence in support of its assessments of the value of the property interest taken.

[10] The appraisal by Kahn's expert was based on the diminution of value as a result of the takings on each of the two parcels of land affected and concluded that the taking on 515 Pond Road reduced the value of that parcel by $145,000 and that the taking on 520 Pond Road reduced that parcel's value by $33,000. The expert did not appraise separately the diminution of value that resulted from the second taking, which only affected 515 Pond Road.

The trial court reduced the award of $178,000 by $35,400, the amount previously received by Kahn from the deposit the commissioner had made with the trial court pursuant to § 13a-73 (b). The trial court also awarded to Kahn $3000 for the cost of repaving property that had been damaged during the construction work. This award brought the total damages owed to $145,600, on which the trial court ordered interest to be paid from the date of the takings. See footnote 11 of this opinion. Finally, the court awarded to Kahn $4900 in appraiser's fees.

[11] Prior to filing this appeal, the commissioner filed a motion for articulation and for an extension of time for filing an appeal after the trial court had issued its articulation. Kahn objected to the motion and thereafter the trial court sustained Kahn's objection. The commissioner then filed a motion to open or set aside the judgment, claiming, inter alia, that the transcript of the hearing was inconsistent in that the trial court had rendered judgment in the amount of $145,600; see footnote 10 of this opinion; but had ordered interest on $145,000. The trial court granted the motion and corrected the judgment to award interest on $145,600.

timely. We limit our discussion, therefore, to the issue only as it pertains to the first application regarding the commissioner's damages assessment of $34,100. We conclude that the time limitation in § 13a-76 is not subject matter jurisdictional and that the commissioner waived this claim by failing to raise the issue in his motion to dismiss.

A

We first must consider whether Kahn's application was timely filed. Section 13a-76 provides in relevant part that "[a]ny person claiming to be aggrieved by the assessment of such special damages . . . by the commissioner may, at any time *within six months after the same has been so filed,* apply to the superior court . . . for a reassessment of such damages . . . ." (Emphasis added.) The statute does not provide for a method of calculating this period and the rules of the Superior Court do not prescribe such a method.

In order to determine the date the filing period commenced in the present case, in the absence of applicable Superior Court rules, we are guided by "[t]he general rule . . . that where a period of time is to be calculated from a particular date or event, the day of such date or event is excluded from the computation. *Lamberti* v. *Stamford,* 131 Conn. 396, 397–98, 40 A.2d 190 (1944)." *DeTeves* v. *DeTeves,* 202 Conn. 292, 297 n.7, 520 A.2d 608 (1987). In the present case, the "particular date or event" under § 13a-76 is the date on which the notice of condemnation was filed. Accordingly, the filing period began June 5, 1996, the day after the notice was filed.

In determining how to calculate the six month period, General Statutes § 1-1 (i) provides that "[t]he word 'month' shall mean a calendar month . . . unless otherwise expressed." We have determined that this term, as applied, "refers to a period of time and not to specific months as named in the calendar." *Krajniak* v. *Wilson,*

157 Conn. 126, 130, 249 A.2d 249 (1968). Accordingly, "[a] period of time of one calendar month, if the first day of that period is the first day of the calendar month, would terminate at the end of the last day of that calendar month rather than at the end of the first day of the next succeeding calendar month. Correspondingly, if the first day of the period is other than the first day of the month, such as July 5 . . . the period of one month would terminate at the end of August 4 rather than at the end of August 5. The same rule applies where the period, as here, consists of several months." Id.; accord *State* v. *Brown*, 40 Conn. App. 483, 487, 671 A.2d 1316 (1996), aff'd, 242 Conn. 389, 699 A.2d 943 (1997) (defendant's motion for speedy trial premature when statute required motion to be filed after expiration of eight month period from date information filed; "because the information was filed on January 15, 1993, the eight month period expired at the end of September 14, 1993"); *Infante* v. *Porath*, 29 Conn. App. 465, 468, 615 A.2d 1073 (1992) (defendant's motion to open judgment pursuant to requirement under Practice Book § 377 [now § 17-43], " 'within four months succeeding the date on which it was rendered,' " was timely; period began to run on April 30, 1991, and period expired on August 29, 1991, same day defendant filed her motion).

Applying these principles to the facts of the present case, we conclude that Kahn's first application was untimely. The commissioner filed the notice of condemnation and assessment of damages on June 4, 1996. Therefore, the six month period commenced on June 5, 1996, and expired at the end of the day on December 4, 1996. Kahn's application for reassessment was filed on December 5, 1996, one day beyond the expiration of the limitation period.

## B

In light of this conclusion, we next consider whether the limitation period in § 13a-76 is jurisdictional or anal-

ogous to a statute of limitations. If the limitation period is a matter of subject matter jurisdiction, it may be raised at any time in the proceedings and may not be waived by the parties. *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 266, 777 A.2d 645 (2001); *Connecticut Steel Co.* v. *National Amusements, Inc.*, 166 Conn. 255, 262, 348 A.2d 658 (1974). If the limitation period is analogous to a statute of limitations, the party seeking to raise it bears the burden of timely asserting the claim or it is deemed to have been waived. *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 766–67, 628 A.2d 1303 (1993); *Orticelli* v. *Powers*, 197 Conn. 9, 15, 495 A.2d 1023 (1985).

Our resolution of this question is informed by this court's decision in *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 294 A.2d 633 (1972). In that case, the issue before the court was whether the trial court properly determined that it lacked jurisdiction, under the revision of General Statutes § 8-132 then in effect,[12] to consider the plaintiff's application for review of the defendant redevelopment commission's statement of compensation for the taking of her property because the application had been filed more than six months after the commission had filed the statement with the court. Id., 527. The court noted "the general

---

[12] Since 1972, when *Karp* was decided, General Statutes § 8-132 has been amended several times. The amendments to the statute subsequent to this court's decision in *Karp*, however, have no bearing on the vitality of that decision. For purposes of clarity, we refer herein to the current revision of § 8-132, which provides in relevant part: "Any person claiming to be aggrieved by the statement of compensation filed by the redevelopment agency may, at any time within six months after the same has been filed, apply to the superior court for the judicial district in which such property is situated, or, if said court is not in session, to any judge thereof, for a review of such statement of compensation so far as the same affects such applicant, and said court or such judge, after causing notice of the pendency of such application to be given to said redevelopment agency, shall appoint a state referee to make a review of the statement of compensation. . . ."

rule that a time limitation on the enforcement of a right, *created by statute and not existing at common law,* is a part of the right and must be met in order to provide a court with jurisdiction to hear the cause of action. See *Baker* v. *Baningoso,* 134 Conn. 382, 385, 58 A.2d 5 [1948]; *DeMartino* v. *Siemon,* 90 Conn. 527, 528, 97 A. 765 [1916]." (Emphasis added.) *Karp* v. *Urban Redevelopment Commission,* supra, 529. The court further noted, however, that the right to just compensation for property taken by the government's exercise of its power of eminent domain, predates "the Magna Carta and forms a part of the common law." Id.; see also U.S. Const., amend. V; Conn. Const., art. I, § 11.

Therefore, the court concluded that "[t]he provisions of § 8-132 provide an efficient procedure for vindicating the common-law right to just compensation for a taking of property by eminent domain. This statute alters the process by which a property owner must seek just compensation, but does not create a right to just compensation that would not otherwise be available.

*"Section 8-132 is not in the nature of a conditional statute in which the limitation is actually a part of a newly created right, and thus determinative of jurisdiction. The limitation is on the remedy alone. Compliance with the time requirement for taking an appeal is not a prerequisite to the existence of the right of action; it is only a limitation analogous to the usual statute of limitation.* This limitation is to be regarded as creating a condition subsequent, by which an existing right is cut off by the nonperformance of the condition, rather than a condition precedent to a continuing right. *Bulkley* v. *Norwich & W. Ry. Co.,* 81 Conn. 284, 287, 70 A. 1021 [1908]." (Emphasis added; internal quotation marks omitted.) *Karp* v. *Urban Redevelopment Commission,* supra, 162 Conn. 530. Moreover, the court noted that "[a] defense predicated on a condition subsequent, and limitations generally, need not be anticipated

and negatived by the plaintiff. They may properly be left to be pleaded by the defendant." Id., 531–32; see also *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 171, 659 A.2d 138 (1995) (citing *Karp* as holding that "time limitation on right to challenge compensation for taking [is] nonjurisdictional"); *Vecchio* v. *Sewer Authority*, 176 Conn. 497, 505 n.5, 408 A.2d 254 (1979) (noting *Karp* held that time limitation is analogous to statute of limitations).

Section 13a-76 is similar to § 8-132 in that both provide a statutory mechanism to effectuate the common-law right to just compensation for a taking by the government—the former applies when the transportation commissioner exercises the state's power of eminent domain by taking property for highway development purposes and the latter applies when a redevelopment agency exercises like authority by taking property for redevelopment purposes. Compare footnote 4 with footnote 12 of this opinion. Therefore, we conclude that the reasoning in *Karp* applies with equal force to § 13a-76. Accordingly, the six month period for filing an application for reassessment under § 13a-76 is not jurisdictional. Rather, it is like a statute of limitations, requiring the commissioner to raise timely the property owner's failure to comply with that provision; failure to do so constitutes a waiver of the defense. *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 226 Conn. 766–67; *Orticelli* v. *Powers*, supra, 197 Conn. 15.

C

We consider, therefore, whether the commissioner raised the issue of Kahn's untimely filing of the first application in his motion to dismiss that application. We conclude that the commissioner failed to do so.

The commissioner's motion to dismiss provides that "the six month [s]tatute of [l]imitations set forth in . . . § 13a-76 has expired," thus *appearing* to assert the issue

affirmatively. Our review of the record, however, reveals that this reference did not pertain to whether Kahn *filed* her application within the limitation period. The commissioner's memorandum of law in support of the motion to dismiss evinces that the commissioner's claim to the trial court pertained solely to the issue of service of process or notice under § 13a-76. Specifically, the commissioner claimed that the statute requires that *service of process or notice* be made within the six month period prescribed for bringing an appeal from the commissioner's assessment.[13] Because Kahn had failed to do so, the commissioner contended that Kahn "has not brought the appeal within the six month period prescribed by . . . § 13a-76." The commissioner contended that such notice was required because "[i]n placing a six month limit on bringing a reassessment appeal, the legislature clearly intended that the condemning authority be able to determine its financial responsibilities." Therefore, on its face, the memorandum did not address the issue of whether the application was filed in a timely fashion.[14]

We find it instructive that, in support of this claim, the commissioner cited in his memorandum *Celano* v. *Burns*, Superior Court, judicial district of New London, Docket No. 515543 (January 23, 1991), a trial court opinion that was later affirmed by the Appellate Court in a per curiam decision without opinion. *Celano* v. *Burns*, 26 Conn. App. 912, 598 A.2d 369 (1991). In that

---

[13] The commissioner also claimed that, because he *never* was served with notice, which, in his view, the statute required, the trial court lacked jurisdiction. Kahn did not contest that the commissioner never was served with notice. We address the import of the issue of notice in part II of this opinion.

[14] Indeed, if the commissioner had intended to assert that Kahn's failure to file her application within the six month period required dismissal, curiously absent from its motion to dismiss and its supporting memorandum of law is any reference to the pertinent dates, namely, when the commissioner had filed the notice of condemnation in the trial court, thus triggering the limitation period, and the date on which Kahn had filed her application.

case, the commissioner prevailed in the trial court by raising the same claim he raised to the trial court in the present case—that the court lacked personal jurisdiction because service was made on the commissioner after the expiration of the order of notice and the six month limitation period. The trial court in *Celano* concluded in its memorandum of decision that the owner "has not *brought* the appeal within the six month period prescribed by . . . [§] 13a-76." (Emphasis added.) *Celano* v. *Burns*, supra, Superior Court, Docket No. 515543. As noted previously, the commissioner used this exact language in his memorandum in support of his motion to dismiss Kahn's application. Particularly noteworthy for our purpose is that, in *Celano*, the property owner had *filed* his application for reassessment within the prescribed six month period. The commissioner's reliance on *Celano* indicates that he was not asserting that Kahn had "filed" an untimely appeal. We conclude, therefore, that the commissioner's motion to dismiss the first application raised the issue of the limitation period as it pertains to the commissioner's notice, and not to Kahn's filing of the application.

This conclusion is further buttressed by the fact that Kahn's memorandum in opposition to the motion to dismiss evinced a similar interpretation of the motion. Kahn limited her response to the issue of whether the statute requires service of notice on the commissioner. Even if we were to assume that the commissioner had a different intention, he had an opportunity to assert the issue of the untimely filing to the trial court at the hearing on the motion. The parties' arguments, however, addressed only whether the statute imposes a requirement that the commissioner be served process or notice. The commissioner never raised the issue of the timing of Kahn's filing of the application. Accordingly, the trial court, in ruling on the motion, addressed

only the issue of whether the statute requires that Kahn serve notice.

Finally, we note that the commissioner acknowledged in oral argument to this court that Kahn's second application was filed timely—indeed, it was filed more than two weeks before the filing deadline expired. Therefore, we logically can infer that, with respect to the motion to dismiss the second application, the commissioner did not contend that Kahn had not filed within the limitation period. Rather, the commissioner contended that service of notice of that application was required within the six month period. Nevertheless, the commissioner filed the identical motion to dismiss and memorandum in support thereof challenging both of Kahn's applications. Accordingly, we presume that the commissioner intended to assert the same claim as to both applications—untimely service. We, therefore, conclude that the commissioner failed to raise a claim of untimely filing in the trial court and, accordingly, has waived that claim.

## II

The commissioner's second claim, which pertains to both the first and second applications filed by Kahn, is that the trial court improperly denied his motions to dismiss because § 13a-76 requires that the commissioner be served with process or notice, and Kahn's failure to do so deprived the trial court of jurisdiction. Specifically, the commissioner contends that the statute must be construed to require that Kahn, at the time she filed her applications, present a motion for an order of notice to the trial court and further to require that Kahn serve the notice on the commissioner. The commissioner therefore contends that, because Kahn failed to seek and to serve such notice, the trial court lacked personal jurisdiction over him. We reject the commissioner's claim.

The issue of whether § 13a-76 requires a particular method of service or notice raises a question of statutory construction, over which we exercise plenary review. *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 439, 797 A.2d 1081 (2002). "[W]hen a particular method of serving process is set forth by statute, that method must be followed. *Hyde* v. *Richard*, 145 Conn. 24, 25, 138 A.2d 527 (1958); *FitzSimmons* v. *International Assn. of Machinists*, 125 Conn. 490, 493, 7 A.2d 448 (1939). Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction. *Hyde* v. *Richard*, supra, 25; *FitzSimmons* v. *International Assn. of Machinists*, supra, 493. The jurisdiction that is found lacking, however, is jurisdiction over the person, not the subject matter." *Connor* v. *Statewide Grievance Committee*, supra, 442.

Our starting point is the language of the statute at issue. See *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 340, 789 A.2d 459 (2002); *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 403, 780 A.2d 903 (2001). Section 13a-76 provides in relevant part that "[a]ny person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated or, if said court is not in session, to any judge thereof for a reassessment of such damages or such benefits so far as the same affect such applicant, and *said court or such judge, after causing notice of the pendency of such application to be given to said commissioner*, shall appoint a judge trial referee to make such reassessment of such damages or such benefits. . . ." (Emphasis added.)

We first note what the statute expressly provides, namely, that the *trial court* has the burden of "causing

notice" to be given to the commissioner. Cf. *Killingly* v. *Wells*, 18 Conn. App. 508, 513–14, 558 A.2d 1039, cert. denied, 212 Conn. 807, 563 A.2d 1357 (1989) (construing identical language in § 8-132 and noting that court bears burden of giving notice). Accordingly, we find no language in the statute to support the commissioner's construction allocating the burden to the *property owner* to initiate and thereafter serve notice on the commissioner.

We further note that, although the statute refers to notice, it does not require expressly either that the applicant submit an order of notice for the court to issue or that the court issue an order of notice. Cf. General Statutes §§ 12-242kk, 45a-434, 46b-46, 52-87, 52-504 and 52-509. Moreover, absent from the statute is any reference to "service" or "process," terms commonly used in our statutes to dictate the necessary procedure by which the court obtains jurisdiction over the person. See, e.g., General Statutes § 4-183 (c) ("person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision"); General Statutes § 7-137c ("owner of any property so assessed may appeal to the superior court . . . by service of process made in accordance with the provisions of [General Statutes §] 52-67"). In light of the frequency with which the legislature expressly employs such terms to dictate the means by which notice must be given, we presume from their absence that neither service of process nor an order of notice is required under the statute.

We must consider, therefore, the meaning of the phrase "causing notice . . . to be given . . . ." General Statutes § 13a-76. The phrase was included as part of the original legislation, found in § 37 of chapter 263 of the Public Acts of 1925. There is no recorded legislative history to illuminate the legislature's intention. "In determining the meaning of a statute, however, we look

not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 42, 792 A.2d 835 (2002); *In re Michaela Lee R.*, 253 Conn. 570, 586, 756 A.2d 214 (2000). Under this scheme, after the commissioner files with the court the notice of condemnation and assessment of damages, the clerk gives notice of the action to the property owner "by *mailing* to each [person of record having an interest of record in the property] a copy of the [assessment] . . . ." (Emphasis added.) General Statutes § 13a-73 (b). Thereafter, if the property owner accepts the assessment, the "clerk shall thereupon notify the . . . commissioner of such acceptance . . . [by] *send[ing]* a certified copy of the assessment and the acceptance thereof to the commissioner . . . ."[15] (Emphasis added.) General Statutes § 13a-74.

Construing the phrase "causing notice . . . to be given" in a manner consistent with this scheme, we conclude that the legislature intended for the trial court to mail notice to the commissioner of a property owner's application for reassessment under § 13a-76. We first note that this construction creates a uniform requirement of notice throughout the scheme. See *In re Michaela Lee R.*, supra, 253 Conn. 586 ("we consider the statutory scheme as a whole and presume that the legislature intended to create a harmonious body of law"). Moreover, it precludes the result of providing greater procedural protection to the commissioner than that afforded to the property owner, who merely receives notice by mail that the commissioner has taken his or her property through the exercise of the state's

[15] If the assessment exceeds $15,000, it must be approved by a state referee prior to the clerk certifying to the commissioner that the property owner has accepted the assessment. General Statutes § 13a-74. If the referee deems the amount unreasonable, the "clerk shall notify the Attorney General and the commissioner and the latter may file an amended assessment." General Statutes § 13a-74.

power of eminent domain. Particularly in light of the property owner's constitutional right to just compensation; see U.S. Const., amend. V; Conn. Const., art. I, § 11; we reject a contrary construction that, in our view, would lead to an absurd result. See *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 101, 801 A.2d 759 (2002) (noting "well established canon of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results" [internal quotation marks omitted]).

This conclusion necessarily requires that we consider whether the trial court had personal jurisdiction over the commissioner in the absence of notice by mail from the court of Kahn's application. In the present case, on June 4, 1996, and February 13, 1997, the commissioner's counsel filed appearances in the trial court when the commissioner filed the notices of condemnation. In November, 1997, Kahn sent to the commissioner's counsel copies of her applications for reassessment as well as copies of her appraisals. In light of these uncontested facts, we conclude that, although the commissioner did not receive a copy of the assessment *from the court*, as provided for under § 13a-76, he received actual notice from Kahn, which permitted the trial court to obtain personal jurisdiction over the commissioner.[16] Indeed, not only would it be manifestly unfair to preclude Kahn

[16] Indeed, other evidence in the record further supports the conclusion that the commissioner had notice of Kahn's applications. On July 28, 1998, Kahn served on the commissioner interrogatories and requests for production pertaining to this action. On October 1, 1998, November 4, 1998, November 17, 1998, March 15, 1999, June 23, 1999, and October 21, 1999, Kahn filed various motions and notices related to this action with the trial court, each of which Kahn certified to the court that a copy had been mailed to the commissioner's counsel. On December 6, 1999, the commissioner's counsel appeared at the hearing on damages, at which time the court dispensed with the commissioner's motion to dismiss that had been pending since April 30, 1999.

from obtaining fair compensation for the property taken simply because of the *trial court's failure* to adhere to the notice requirements under the statute; cf. *Killingly* v. *Wells*, supra, 18 Conn. App. 513–14 (court bears burden of giving notice under § 8-132); such a conclusion would raise serious due process concerns. See *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 428–33, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982) (concluding that state's action to terminate complainant's employment discrimination action because state official, for reasons beyond complainant's control, failed to comply with statutorily mandated procedure, violated due process clause); *In re Valerie D.*, 223 Conn. 492, 534, 613 A.2d 748 (1992) (citing *Zimmerman Brush Co.* for proposition that " 'state may not, consistent with due process of law, create the conditions that will strip an individual of an interest protected under the due process clause' "). Accordingly, we conclude that the trial court properly exercised jurisdiction over the commissioner.

The judgment is affirmed.

In this opinion the other justices concurred.