[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In a two count revised complaint dated May 28, 1992, the plaintiff, James F. Virgulak, alleges that he is owed back wages for services pursuant to a written employment agreement with his former employer, the defendant Facsimile Marketing, Inc. (Facsimile) and defendant Jeremy Grayzel, president and sole stockholder of the corporate defendant. The plaintiff alleges that he worked for Facsimile, a communications company, between October, 1989 and October, 1990, as director of the corporate defendant's "Data Base" program; that the agreed rate of compensation was $100,000 a year; and that Grayzel personally guaranteed payment of this sum. The ad damnum clause to the complaint seeks double damages, costs, attorneys' fees and interest pursuant to General Statutes 31-72.[1]
The defendants filed a special defense claiming that plaintiff breached the covenant of good faith and fair dealing that is implied in all contracts. The defendants allege that plaintiff agreed to a salary of $50,000 for the first six months of his employment; that in the ensuing six months additional compensation would be paid plaintiff only if the corporation's financial condition permitted; and that plaintiff voluntarily terminated his employment without prior notice or demand for additional compensation.
The case was tried to the court over the course of two days during which four witnesses, including the plaintiff and defendant Grayzel, testified and approximately seven exhibits, including the employment agreement, were admitted into evidence. CT Page 668 The employment agreement is dated September 22, 1989, and was effective October 2, 1989, the date plaintiff commenced employment with Facsimile. The agreement contains a "Schedule I" entitled "Terms of Employment," which provides, among other things, that the plaintiff would work for Facsimile for "an initial term of six months" and that his aggregate compensation during this "initial term" would be $50,000. Schedule I also provides that "on the date of Expiration of the Initial Term and thereafter the compensation of the Employee shall be adjusted as set forth in Section 3.2 of this Agreement." Section 3.2 provides in pertinent part that compensation after the initial period of employment would be "as determined in the sole discretion of the Company. . ." Section 13 of the employment agreement provides that in any action relating to the agreement, the prevailing party "shall be entitled to recover from the other party reasonable costs, including attorneys' fees." Section 15 entitled "Entire Agreement," provides that: "[t]his Agreement constitutes the entire agreement between the parties and there are no representations, warranties or commitments except as set forth herein. This Agreement supersedes all prior and contemporaneous agreement, understandings, negotiations and discussions, whether written or oral, of the parties hereto relating to the transactions contemplated by this Agreement. This Agreement may be amended only in writing executed by the parties hereto affected by such amendment."
Plaintiff claims that Facsimile agreed to compensate him at the rate of $100,000 for one year of employment and that Grayzel personally guaranteed and assured plaintiff that he would receive that amount. Plaintiff claims that he is owed $37,750, representing the difference between $100,000, the amount he claims was promised him by the defendants, and $62,250, the amount actually received during the twelve months of his employment. Plaintiff also seeks compensation for the extra several weeks he worked in October, 1990, for a total of $41,083, or $82,166 when doubled pursuant to General Statutes 31-72. In addition, plaintiff claims $12,400 attorney's fees and costs of $318 pursuant to both General Statutes 31-72 and/or section 13 of the employment agreement. The plaintiff also seeks interest on money wrongfully withheld pursuant to General Statutes 37-3a at 10% per annum from October, 1990, to the date of judgment, amounting to approximately $13,400, for a total claim against both defendants of approximately $108,300. Plaintiff concedes that Grayzel did not personally guarantee his salary in writing, but contends that the Statute of Frauds, General Statutes 52-550(a)(2), CT Page 669 is not applicable because of part performance and estoppel.
The central issue in this case is whether the plaintiff was hired to work for the defendants for $100,000 a year, as alleged in plaintiff's brief. At the trial, the evidence in the form of payroll records indicates that plaintiff was paid $31,000 for the first six months of his employment, which sum includes a $1,000 bonus, instead of the $50,000 agreed to in the employment agreement, for an unpaid balance of $19,000.[2] These records also indicate that the plaintiff was paid $31,250 during the second six months of his employment, April through the end of September, 1990, and $2,500 for the time he worked in October of 1990, after the one year of employment was finished. Plaintiff left his employment with Facsimile at the end of October, 1990.
After evaluating the testimony and the exhibits, it seems evident that the written employment agreement governs this controversy. This agreement is clear and explicit that the plaintiff was to be paid $50,000 for the first six months of his employment, and that during the remaining six months he would be paid at a rate set by the employer.[3] I therefore believe that the plaintiff has a valid claim for underpayment for the first six months of his employment but not thereafter, since the employer had sole discretion to set the amount for that second six months, and plaintiff continued to work for Facsimile during those months and accepted the payments made by his employer. Moreover, plaintiff claims that although he had a written agreement for the first six months of his employment, he claims to have had an oral agreement with defendants that he would continue to earn $50,000 for the next six months, a contention that runs squarely counter to the "entire agreement" provision contained in section 15 of the employment agreement.
"If the evidence leads to the conclusion that the parties intended the written contracts to contain the whole agreement, evidence of oral agreements is `excluded,' that is, excluded from consideration in the determination of the rights and obligations of the litigants, even though it is admitted on the issue of their intention." Associated Catalog Merchandisers, Inc. v. Chagnon, 210 Conn. 734, 739-40, 557 A.2d 1525 (1989). "A written agreement is `integrated' and operates to exclude evidence of the `alleged extrinsic negotiation' if the subject matter of the latter is `mentioned, covered or dealt with in the writing . . .'" (Citations and internal quotation marks omitted.) Id., 740. The court finds that the employment agreement was CT Page 670 intended to "contain the whole agreement" of the parties to this litigation because the subject of compensation for the second six months was "mentioned, covered, or dealt with" in section 3.2 of the employment agreement in that it was provided that compensation for that period would be "as determined in the sole discretion of the Company." Id.
With respect to the claim that Grayzel is personally liable to the plaintiff for back wages because he allegedly orally guaranteed payment by his company, Facsimile, "[a]n undertaking, by a party not before liable, for the purpose of securing, or for the performance of, a duty for which the party for whom the undertaking is made continues liable is within the Statute of Frauds. . . It is a special promise to answer for the debt, default or miscarriage of another." (Citation omitted.) E. Paul Kovacs Co. v. Blumgarten, 150 Conn. 8, 11, 183 A.2d 844 (1962); see also General Statutes 52-550(a)(2). Thus, according to the Statute of Frauds, a guarantee must be in writing to be enforceable, and no such writing by defendant Grayzel exists.
Moreover, the plaintiff did not prove that the statute could be avoided by alleged part performance or estoppel. The claim in this regard is that the plaintiff continued to work the second six months because Grayzel promised to pay him $50,000 for that period. Certain acts by a promisee may be sufficient to take an oral contract out of the Statute of Frauds. Ubysz v. DiPietro,185 Conn. 47, 54, 440 A.2d 830 (1981). "The doctrine of part performance requires . . . conduct that is `referable to and consistent with [an] oral agreement [between] the parties.'" (Citation omitted). Dunham v. Dunham, 204 Conn. 303, 314,528 A.2d 1123 (1987). The court must find that the party seeking enforcement of the agreement: (1) reasonably relied on the agreement and on the continuing assent of the party against whom enforcement is sought; and (2) that the party has so changed his position that injustice can only be avoided by specific enforcement of the agreement. Id., 315. Related to the doctrine of part performance is the concept of estoppel. A claim of estoppel is predicated upon proof "`of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.'" (Citation omitted). O'Sullivan v. Bergenty, 214 Conn. 641, 648, 573 A.2d 729 (1990). "The acts also must be of such a character that they can be CT Page 671 naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute." DeLuca v. C. W. Blakeslee Sons. Inc., 174 Conn. 535,544, 391 A.2d 170 (1978). The fact that plaintiff worked the second six months, and accepted payment during those months at a rate less than $50,000 for six months, can be accounted for without inferring a contract to work for that amount.
In addition, the defendants' special defense that plaintiff did not act in good faith because he terminated his employment and commenced suit very quickly thereafter has not been proved. "Neglect or refusal to fulfill a contractual obligation can be bad faith only if prompted by an interested or sinister motive." Feinberg v. Berglewicz, 32 Conn. App. 857, 862, 632 A.2d 709
(1993). The fact that when the plaintiff left his employment he evidently did not make a specific demand for back pay at that time, but rather brought suit within about three weeks after his departure, does not constitute bad faith as defined in Feinberg as requiring "more than mere negligence; it involves a dishonest purpose." Id.
Accordingly, the plaintiff is awarded $19,000, the balance due for his first six months of employment. This amount was unreasonably and arbitrarily withheld from plaintiff by the corporate defendant when it was due in October, 1990 and therefore is doubled to $38,000 pursuant to General Statutes 31-72. No award is being made for the second six months because the amount of compensation for that period was in the sole discretion of the employer.
The plaintiff is entitled also to an award of attorney's fees and under the circumstances, including the amount of recovery and the length and difficulty of the trial, I believe that $7,500 is a reasonable award. In the light of the doubling of damages pursuant to General Statutes 31-72, prejudgment interest authorized by General Statutes 37-3a is not awarded.
Therefore, judgment enters in favor of the plaintiff for $45,500 against the corporate defendant only. Court costs are to be taxed by the clerk.
So Ordered.
Dated in Stamford, Connecticut this 25th day of January 1994. CT Page 672
William B. Lewis, Judge